UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

B.L.                                                                          Plaintiff

v.                                       Civil Action No. 3:18-cv-151-RGJ-CHL

                                                            SENIOR ACTION
                                                       CONSOLIDATED WITH:

                                       Civil Action No. 3:18-cv-000152-RGJ
                                       Civil Action No. 3:18-cv-000153-RGJ
                                       Civil Action No. 3:18-cv-000157-RGJ
                                       Civil Action No. 3:18-cv-000158-RGJ
                                       Civil Action No. 3:18-cv-000176-RGJ
                                       Civil Action No. 3:18-cv-000306-RGJ

BRADLEY SCHUHMANN, *ET AL*.                                       Defendants

* * * * *

## <u>MEMORANDUM OPINION & ORDER</u>

This matter is before the Court on forty motions filed by the Defendants Bradley
Schuhmann ("Schuhmann"), Kenneth Betts ("Betts"), Curtis Flaherty ("Flaherty"), Matthew
Gelhausen ("Gelhausen"), Julie Schmidt ("Schmidt"), Brandon Wood ("Wood"), Brandon Paul
Paris ("Paris"), Casey Scott ("Scott"), the City of Louisville/Jefferson County/Louisville
Consolidated Government ("Metro Government"), Boy Scouts of America ("BSA"), Lincoln
Heritage Counsel, Inc. ("LHC"), Learning for Life ("LFL"), and Learning for Life Lincoln
Chapter, Inc. ("LFLLC")[1] and one motion filed by Plaintiff C.F. Briefing is complete and the
motions are ripe for adjudication.

---

[1] BSA, LHC, LFL, and LFLLC are collectively referred to as the Boy Scout Defendants.

# I. BACKGROUND AND JURISDICTION

This consolidated case[2] arises out of the alleged sexual abuse of seven individuals participating in the Louisville Metro Police Department's ("LMPD") career education program known as the "Explorer Program." Defendants removed each case from Jefferson Circuit Court based on federal question jurisdiction, 28 U.S.C. § 1331, stemming from Plaintiffs' gender and age discrimination claims under 42 U.S.C.S. § 2000e-2(a) and 42 U.S.C.S. § 2000e-2(d), hostile educational environment and sex discrimination claims under Title IX of 20 U.S.C. § 1681(a), and constitutional claims under 42 U.S.C. § 1983. The Court has supplemental jurisdiction, 28 U.S.C. § 1367, for Plaintiffs' remaining state law claims.

## A.    B.L.'s Claims

B.L. alleges that in 2008 and 2009, Defendant Schuhmann, while acting as an LMPD officer and Boy Scout leader, sexually harassed and assaulted B.L., solicited sexual photographs, solicited sex, and transmitted sexual material. *See B.L. v. Bradley Schuhmann, et al.*, 3:18-cv-00151 ("Case 151") [DE 1-4, Sec. Am. Compl. ¶ 2]. B.L. was a minor at that time. *Id.* at ¶ 76.

B.L. filed suit on October 20, 2017. B.L. claims assault, sexual assault, harassment, and battery against Schuhmann in Count I. *Id.* at ¶¶ 80–87. In Counts II and III, B.L. claims vicarious liability and negligent hiring, entrustment, training, supervision, and/or retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 88–97. B.L. asserts claims against these same Defendants, as well as Betts, Gelhausen, Wood, and Schmidt, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, fraudulent concealment, failure to report, and childhood sexual assault in Counts IV, V, VI, VII, VIII, and IX, respectively. *Id.* at ¶¶ 98–137. In Count X, B.L. brings a gender and age discrimination claim

---

[2] The Court consolidated the matters for discovery and pretrial practice. [DE 57].

under state and federal statutes against Metro Government. *Id.* at ¶¶ 138–45. In Count XI, B.L. brings a claim for hostile educational environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[3] *Id.* at ¶¶ 146–52. In Count XII, B.L. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, Wood, Flaherty, Schmidt, Gelhausen, and Schuhmann. *Id.* at ¶¶ 153–59.

Motions to dismiss were filed in B.L.'s case by Defendants Schuhmann, Betts, Flaherty, Gelhausen, Schmidt, Wood, Metro Government, and the Boy Scout Defendants. [DE 22; 12; 14; 16; 13; 10; 11; 15; respectively]. B.L. filed responses, [DE 37; 30; 31; 27; 32; 26; 29; 28], and replies were filed by Schuhmann, Betts, Flaherty, Schmidt, Wood, Metro Government, and the Boy Scout Defendants, [DE 52; 42; 45; 50; 38; 44; 43]. No reply was filed by Gelhausen.

### B. A.S.'s Claims

A.S. sued on February 15, 2018, for offenses alleged to have occurred in 2010. *See A.S. v. Louisville/Jefferson County Metro Government, et al.,* 3:18-cv-00152 ("Case 152") [DE 1-1, Ver. Compl. ¶ 2]. A.S. claims assault, sexual assault, harassment, and battery against Betts in Count I. *Id.* at ¶¶ 65–72. In Counts II and III, A.S. claims vicarious liability and negligent hiring, entrustment, training, supervision, and retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 73–82. A.S. sues these same Defendants, as well as Betts, Wood, Schmidt, and Paris, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, fraudulent concealment, failure to report, and childhood sexual assault in Counts IV, V, VI, VII, VIII, and IX, respectively. *Id.* at ¶¶ 83–122. In Count X, A.S. claims gender and age discrimination in violation of state and federal statutes against Metro Government. *Id.* at ¶¶ 123–30. In Count XI, A.S. brings a claim for hostile educational

---

[3] Count XII was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 51].

environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[4] *Id*. at ¶¶ 131–37. In Count XII, A.S. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, and Flaherty. *Id*. at ¶¶ 138–44.

In A.S.'s case, motions to dismiss were filed by Defendants Betts, Flaherty, Metro Government, and the Boy Scout Defendants. [DE 63; 65; 62; 64]. A.S. filed responses, [DE 69; 70; 68; 66], and replies were filed, [DE 72; 75; 74; 66].

### C.    K.W.'s Claims

K.W. sued on November 15, 2017, alleging offenses in 2011 and 2013. *See K.W. v. Kenneth Betts, et al*., 3:18-cv-00153 ("Case 153") [DE 1-3, First Am. Compl ¶ 2]. K.W. claims assault, sexual assault, harassment, and battery against Betts in Count I. *Id.* at ¶¶ 85–92. In Counts II and III, K.W. claims vicarious liability and negligent hiring, entrustment, training, supervision, and retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 93–102. K.W. sues these same Defendants, as well as Betts, Wood, Schmidt, and Paris, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, fraudulent concealment, failure to report, and childhood sexual assault in Counts IV, V, VI, VII, VIII, and IX, respectively. *Id*. at ¶¶ 103–42. In Count X, K.W. brings gender and age discrimination claims under state and federal statutes against Metro Government. *Id*. at ¶¶ 143–50. In Count XI, K.W. claims hostile educational environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[5] *Id*. at ¶¶ 151–57. In Count XII, K.W. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, Wood, Flaherty, Schmidt, and Paris. *Id*. at ¶¶ 158–64.

---

[4] Count XII was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 76].

[5] Count XII was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 103].

In K.W.'s case, motions to dismiss were filed by Defendants Betts, Wood, Flaherty, Schmidt, Paris, Metro Government, and the Boy Scout Defendants. [DE 81; 79; 85; 82; 83; 80; 84; respectively]. K.W. responded, [DE 92; 86; 93; 91; 89; 88; 87], and the moving Defendants replied, [DE 97; 94; 102; 101; 99; 98]. No reply was filed by Paris.

**D. N.C.'s Claims**

N.C. sued on March 8, 2017, alleging offenses in 2011. *See N.C. v. Brandon Wood, et al.,* 3:18-cv-00157 ("Case 157") [DE 1-115, Sec. Am. Compl. ¶ 2]. N.C. brings claims for assault, sexual assault, harassment, and battery against Wood in Count I. *Id.* at ¶¶ 69–76. In Count II, N.C. brings a claim for sexual harassment against Betts. *Id.* at ¶¶ 77–83. In Counts III and IV, N.C. brings claims for vicarious liability and negligent hiring, entrustment, training, supervision, and retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 84–93. N.C. asserts claims against these same Defendants, as well as Betts and Wood, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, fraudulent concealment, failure to report, and childhood sexual assault in Counts V, VI, VII, VIII, IX, and X, respectively. *Id.* at ¶¶ 94-133. In Count XI, N.C. claims gender and age discrimination under state and federal statutes against Metro Government. *Id.* at ¶¶ 134–41. In Count XII, N.C. claims hostile educational environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[6] *Id.* at ¶¶ 142–48. In Count XIII, N.C. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, Wood, and Flaherty. *Id.* at ¶¶ 149–55.

---

[6] Count XII was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 133].

In Plaintiff N.C.'s case, Defendants Betts, Wood, Flaherty, Metro Government, and the Boy Scout Defendants have moved to dismiss. [DE 107; 104; 108; 105; 106]. N.C. responded, [DE 118; 110; 121; 119; 117], and replies were filed, [DE 131; 123; 132; 126; 128].

### E.    E.B.'s Claims

E.B. sued on February 19, 2018, alleging offenses between 2010 and 2013. *See E.B. v. Kenneth Betts, et al*., 3:18-cv-00158 ("Case 158") [DE 1-2, Compl. at ¶ 2]. Unlike the other Plaintiffs, E.B. does not allege to have been a minor. E.B. brings claims for assault, sexual assault, harassment, and battery against Betts in Count I.  *Id.* at ¶¶ 56–63. In Counts II and III, E.B. brings claims for vicarious liability and negligent hiring, entrustment, training, supervision, and retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 64–73. E.B. sues these same Defendants and Betts, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, and fraudulent concealment in Counts IV, V, VI, and VII, respectively. *Id*. at ¶¶ 74–94. Unlike the other Plaintiffs, E.B. does not bring a claim for failure to report, childhood sexual assault, or sex and age discrimination. In Count VIII, E.B. brings a claim for hostile educational environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[7] *Id*. at ¶¶ 95–101. In Count IX, E.B. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, and Flaherty. *Id*. at ¶¶ 102–08.

In E.B.'s case, Defendants Betts, Flaherty, Metro Government, and the Boy Scout Defendants moved to dismiss. [DE 139; 140; 135; 136]. Responses were filed by E.B., [DE 149; 151; 144; 146], and replies were filed by the moving Defendants, [DE 158; 159; 154; 155].

---

[7] Count VIII was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 160].

### F.     F.A.'s Claims

F.A. sued on December 26, 2017, for alleged offenses in 2009. *See F.A. v. Kenneth Betts, et al.,* 3:18-00176 ("Case 176") [DE 1-4, First Am. Compl. ¶ 2]. F.A. brings claims for assault, sexual assault, harassment, and battery against Betts in Count I. *Id.* at ¶¶ 68–75. In Counts II and III, F.A. brings claims for vicarious liability and negligent hiring, entrustment, training, supervision, and retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 76–85. F.A. sues these same Defendants, and Betts, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, fraudulent concealment, failure to report, and childhood sexual assault in Counts IV, V, VI, VII, and IX, respectively. *Id.* at ¶¶ 86–125. In Count X, F.A. claims hostile educational environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[8] *Id.* at ¶¶ 126–32. In Count XI, F.A. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, and Flaherty. *Id.* at ¶¶ 133–39. F.A. does not bring a claim for sex or age discrimination.

In F.A.'s case, Defendants Betts, Flaherty, Wood, Scott, Metro Government, and the Boy Scout Defendants moved to dismiss. [DE 163; 166; 161; 168; 162; 167]. F.A. filed responses, [DE 173; 172; 169; 175; 170; 174], and replies were filed by all but one of the moving Defendants, [DE 180; 182; 176; 179; 183]. No reply was filed by Scott.

### G.     C.F.'s Claims

C.F. sued on August 31, 2017, alleging offenses from 2012 to 2013. *See C.F. v. Kenneth Betts, et al.,* 3:18-cv-00306 ("Case 306") [DE 1-2, First Am. Compl. ¶ 2]. C.F. brings claims for assault, sexual assault, harassment, and battery against Betts in Count I. *Id.* at ¶¶ 70–77. In Counts II and III, C.F. brings claims for vicarious liability and negligent hiring, entrustment,

---

[8] Count X was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 184].

training, supervision, and retention, against Flaherty, Metro Government, and the Boy Scout Defendants. *Id.* at ¶¶ 78–87. C.F. sues these same Defendants, as well as Betts and Wood, for intentional infliction of emotional distress, negligence, fraud by omission/duty to disclose, fraudulent concealment, failure to report, and childhood sexual assault in Counts IV, V, VI, VII, VIII, and IX, respectively. *Id.* at ¶¶ 88–127. In Count X, C.F. brings a claim for gender and age discrimination claim under state and federal statutes against Metro Government. *Id.* at ¶¶ 128–35. In Count XI, C.F. brings claims for hostile educational environment and sex discrimination against Metro Government, and the Boy Scout Defendants.[9] *Id.* at ¶¶ 136–42. In Count XII, C.F. brings a claim for violating 42 U.S.C. § 1983 against Metro Government, Betts, Wood, and Flaherty. *Id.* at ¶¶ 143–49.

Finally, in C.F.'s case, motions to dismiss were filed by Defendants Betts, Wood, Metro Government, and the Boy Scout Defendants.[10] [DE 190; 188; 185; 187; 186]. Responses were filed by C.F., [DE 192; 195; 194; 193], and replies were filed by the moving Defendants, [DE 196; 198; 200; 201]. Defendant Flaherty is a party to C.F.'s case but did not move to dismiss. In addition, C.F. moved for leave to file a second amended complaint to add claims against Wood, [DE 197; DE 197-1 at ¶¶ 70–78], for assault, sexual assault, harassment, and battery in Count I. Defendants Wood, Betts, Flaherty, and the Boy Scout Defendants filed responses objecting to the motion, [DE 203; 202; 204; 205], and C.F. filed a reply, [DE 206].

## II. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P.

---

[9] Count XII was dismissed against the Boy Scout Defendants in an agreed-upon order of dismissal. [DE 210; DE 212].

[10] In C.F.'s case, separate motions to dismiss were filed by BSA/LHC and LFL/LFLLC.

12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the

complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III. ANALYSIS

### A. Pseudonym

Defendants Betts, Woods, Flaherty, and Paris argue that Plaintiffs' claims should be dismissed because Plaintiffs' use of a pseudonym violates Fed. R. Civ. P. 10(a) ("[t]he title of the complaint must name all of the parties") and 17(a)(1) ("[a]n action must be prosecuted in the name of the real party in interest"). The Court addressed this issue in its August 15, 2018 Order granting Plaintiffs' leave to proceed under pseudonyms. [DE 57]. Accordingly, for the reasons stated in the August 15, 2018 Order, the motions to dismiss on these grounds are denied.

### B. Statute of Limitations

Dismissal of a claim under Rule 12(b)(6) on grounds that it is barred by a limitations period is warranted only if "the allegations in the complaint *affirmatively show* that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (emphasis added). In other words, it must be "apparent from the face of the complaint that the limit for bringing the claim[s] has passed." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (alteration in original)(quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)).

Defendants assert the one-year statute of limitations for personal injuries under KRS 413.140(1)(a) applies to Plaintiffs' claims. Plaintiffs (except for E.B) assert the ten-year statute of limitations under KRS 413.249 applies to all of their claims. First, the Court will address Defendants' argument that the ten-year statute of limitations in KRS 413.249 is unconstitutional.

Then, the Court will address to which defendants and claims KRS 413.249 applies. Finally, the Court will address the applicable statute of limitations for each of the claims asserted.[11]

1.  Is KRS 413.249 Constitutional?

Defendants advance two arguments that KRS 413.249 is unconstitutional. First, the Jefferson Circuit Court in *Cape Publ'ns, Inc. d./b/a The Courier Journal v. Commonwealth*, 02-CI-6338 (Jefferson Cir. Ct., Div. 1 Jan. 26, 2004), found Section (3) of the statute, which requires sealing of the complaint in certain instances, unconstitutional. Defendants argue that because Section (3) is unconstitutional and inseverable from the other sections, the entire statute is unconstitutional. Second, Defendants assert the statute is special legislation banned by Section 59 of the Constitution of the Commonwealth of Kentucky.

i.  *Severability*

*Cape Publications* found that the title of the statute, "Action relating to childhood sexual abuse or childhood sexual assault," did not adequately provide notice of the statute's effect on the sealing of records and thus Section (3) was unconstitutional. Defendants argue that Section (2) of the statute is inseverable from Section (3) and as a result the entire statute is unconstitutional. This argument fails.

As a threshold issue, the opinion from *Cape Publications* is not binding precedent. The issue has never been addressed in a published opinion or by the Kentucky Supreme Court. Thus, Section (3) of KRS 413.249 is still good law. Ky. R. Civ. P. 76.28(4)(c) (unpublished state-court decisions are not binding precedent in any other case in any court of Kentucky). The Court need not determine here whether Section (3) is unconstitutional because, even assuming it is, Section (2) is severable. KRS 446.090 provides:

---

[11] Federal courts evaluating state law claims apply the forum state's law regarding statute of limitations. *See Curtis v. State Farm Fire and Cas. Co.*, 617 F. App'x 517, 518 (6th Cir. 2015) (citations omitted).

> It shall be considered that it is the intent of the General Assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly.

KRS 446.090. The presumption is that if KRS 413.249(3) is unconstitutional, Section (2) will remain in force, unless either: (a) the statute provides otherwise; or (b) Section (2) is so "essentially and inseparably connected with and dependent upon" Section (3) that it is apparent the General Assembly would not have enacted Section (2) without Section (3).

Neither exception to the presumption of severability applies here. First, KRS 413.249 contains no language stating the statute is not severable. Second, Section (2) is not "essentially and inseparably connected and dependent upon" Section (3). Section (3) provides that if the allegations are more than 10 years old, the complaint and case will be sealed until the court does one of three actions: rules on the motion to seal, rules on a motion to dismiss, or rules on a motion for summary judgment (where defendant has moved to seal). The initial sealing of the record provided by Section (3) is intended for the benefit of a defendant. Section (2) provides the 10 year-statute of limitations for civil cases that seek damages arising out of childhood sexual abuse and/or assault. The section is intended to benefit of victims of childhood sexual assault/abuse. The purposes of these sections are different and do not depend on one another. Either section could operate without the other and thus Section (2) is severable. *See Louisville v. Miller*, 697 S.W.2d 164, 166–67 (Ky. App. 1985) ("[I]t is presumed that legislative acts have severable provisions, if what remains after severance is fully operable as a law.").

ii.    *Special Legislation*

Defendants argue that Sections (1) and (2) of KRS 413.249 are prohibited "special legislation" because they draw an arbitrary distinction between the class of persons which can be victims of "childhood sexual assault" and "childhood sexual abuse" by defining a "child" in Section (1) as meaning "a person less than eighteen (18) years old." In other words, Defendants argue a person who was sexually assaulted or sexually abused a day after his or her eighteenth birthday would not get the benefit of the extended statute of limitations in Section (2) and the statute is thus arbitrary. *See, e.g.*, [DE 161, Wood Mot. Dis. at 6508]. Plaintiffs argue that this legislation is a valid exercise by the legislature regulating the statute of limitations for victims of childhood sexual abuse or assault.

Section 59 of the Kentucky Constitution is entitled "Local and special legislation." It provides: "The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: . . . [t]o regulate the limitation of civil or criminal causes." KY. CONST. § 59. Kentucky courts follow a two-part test for determining whether a law is constitutional under Section 59: (1) It must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification. *Zuckerman v. Bevin*, 565 S.W.3d 580, 600 (Ky. 2018), *reh'g denied* (Feb. 14, 2019); *Schoo v. Rose*, 270 S.W.2d 940, 941 (Ky. 1954). Under the second requirement, "a substantial and justifiable reason [must appear] from legislative history, from the statute's title, preamble or subject matter, or from some other authoritative source." *Tabler v. Wallace*, 704 S.W.2d 179, 186 (Ky. 1985). In applying this test, the Court "is to draw all reasonable inferences and implications from the act as a whole and thereby sustain its validity." *Waggoner v. Waggoner*, 846 S.W.2d 704, 707 (Ky. 1992) (citing *Graham v. Mills*, 694 S.W.2d 698 (Ky.

1985)). "[I]f any possible reasonable basis can be conceived to justify the classification, then it should be upheld." *Meredith v. Ray*, 166 S.W.2d 437, 439 (Ky. 1942).

Sections (1) and (2) of KRS 413.249 are not special legislation prohibited by Section 59. The legislation satisfies the first element of the test as it applies equally to all in the class, *i.e.*, those individuals under age 18 when the sexual assault/abuse occurred.

Under the second requirement, distinctive and natural reasons support the statute's defining of "childhood sexual assault" and "childhood sexual abuse" as applying to persons under age 18. The legislature's intent to provide an extended statute of limitations for sexual assault or abuse during childhood is obvious from the title, language, and subject matter of Sections (1) and (2). Judge Cunningham reached a similar conclusion in C.F.'s case before its removal to federal court, denying Betts's argument that KRS 413.249 is special legislation:[12]

> This simply isn't special legislation. As an example, the General Assembly decided to give persons whose personal injury claims arise from a motor vehicle collision two years, rather than one, to file suit. KRS 304.39-230. No binding precedent has declared this unconstitutional as special legislation despite the tens of thousands of cases which have been filed under longer limitations period. Similarly, KRS 413.249 is a constitutionally legitimate exercise of the legislature's prerogative. Moreover, there is a well-understood basis for concluding that the longer limitations period is both necessary and just for victims of child sexual abuse or assault. Such victims do not respond as an adult might and often need years to come to grips with what happened to them.

Opinion and Order, 17-CI-4585, *C.F. v Kenneth Betts*, *et al.*, at 5–6 (Dec. 28, 2017, Jefferson Cir. Ct., Div. 4). This purpose is also found in the legislative history in Section 2 of Senate Bill 53, which enacted KRS 413.249 in July 1998, and provides: "[t]he General Assembly finds that retroactive effect is necessary to provide uniform justice to the victims of sexual offenses who were children when the offenses occurred." [DE 37, B.L. Resp. at Exh. 1]. Thus, the motions to dismiss based on the constitutionality of KRS 413.249 are denied.

---

[12] Judge Cunningham presided over C.F.'s case until its removal to federal court, but other divisions of the Jefferson Circuit Court presided over the other Plaintiffs' cases.

## 2. To which claims does KRS 413.249 apply?

Defendants argue that the statute of limitations in KRS 413.249 does not apply to the claims against the Defendants that are "non-perpetrators"[13] of the alleged abuse. Neither the Supreme Court of Kentucky nor any other published decision of the Kentucky Court of Appeals[14] has directly addressed to which claims and defendants KRS 413.249 applies. In resolving an issue of state law in federal court, we must "make [the] best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with this question." *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009); *Swanson v. Wilson*, 423 F. App'x 587, 594 (6th Cir. 2011). When a federal court must apply substantive state law on an issue of first impression, or an issue which that state's courts have not comprehensively addressed or definitively ruled on, it is the court's "duty . . . to decide unsettled issues of state law as a Kentucky court would decide them." *Kelly v. McFarland*, 243 F. Supp. 2d 715, 717 (E.D. Ky. 2001) (citing *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982)); *see also Ennes v. H & R Block E. Tax Servs., Inc.*, No. 3:01CV-447-H, 2002 WL 226345, at *2 (W.D. Ky. Jan. 11, 2002) (citing the same).

---

[13] The parties' briefing frames this issue as whether KRS 413.249 applies to "non-perpetrators" versus "perpetrators" of sexual assault. However, KRS 413.249 does not include, use, or define the term "perpetrator." KRS 413.249 defines "childhood sexual assault" for the statute of limitations, setting forth enumerated offenses that constitute same, and includes, in two instances, criminal actions that involve less direct forms of carrying out childhood sexual assault. Thus, the Court does not frame the issue in the same manner.

[14] As discussed below, the issue has been mentioned in *dicta* in a published opinion of the Kentucky Court of Appeals.

The Court first looks to the statute.[15] Section (2) of KRS 413.249 defines the statute of limitations for "[a] civil action for recovery of damages for injury or illness suffered as a result of childhood sexual abuse or childhood sexual assault . . ." Section (1)(a) defines childhood sexual assault as:

> an act or series of acts against a person less than eighteen (18) years old and which meets the criteria defining a felony in KRS 510.040, 510.050, 510.060, 510.070, 510.080, 510.090, 510.110, 529.100 where the offense involves commercial sexual activity, 529.110 where the offense involves commercial sexual activity, 530.020, 530.064, 531.310, or 531.320. **No prior criminal prosecution or conviction of the civil defendant for the act** or series of acts **shall be required to bring a civil action for redress of childhood sexual assault** . . .

Section (1)(b) defines childhood sexual abuse as:

> an act or series of acts against a person less than eighteen (18) years old and which meets the criteria defining a misdemeanor in KRS 510.120, KRS 510.130, KRS 510.140, or KRS 510.150. **No prior criminal prosecution or conviction of the civil defendant for the act or** series of acts shall be required to **bring a civil action for redress of childhood sexual abuse** . . .

KRS § 413.249(1)(a)-(b) (emphasis added). Thus, the statute defines "childhood sexual assault" and "childhood sexual abuse" as an act against a person less than 18 years old that meets the criteria defining a felony or misdemeanor in certain expressly enumerated criminal statutes.

---

[15] Under Kentucky law, "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature." KRS 446.080(1); *Hale v. Combs*, 30 S.W.3d 146, 151 (Ky. 2000). To determine legislative intent, "[r]esort must be had first to the words, which are decisive if they are clear," *Stephenson v. Woodward*, 182 S.W.3d 162, 170 (Ky. 2005) (alteration in original) (internal quotation marks omitted) (quoting *Gateway Constr. Co. v. Wallbaum*, 356 S.W.2d 247, 249 (Ky. 1962)), "rather than surmising what may have been intended but was not expressed," *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (internal quotation marks and citations omitted). "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002). "The most commonly stated rule in statutory interpretation is that the 'plain meaning' of the statute controls." *Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 614 (Ky. 2004). To that end, "an act is to be read as a whole, *i.e.*, any language in the act is to be read in light of the whole act, not just a portion of it." *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 465 (Ky. 2004) (internal quotation marks and citations omitted). And "[w]hat is not said may be of as much significance as what is said." *Davis v. Commonwealth Life Ins. Co.*, 284 S.W.2d 809, 810 (Ky. 1955).

Thus, the plain language supports a finding that the 10-year statute of limitations only applies to claims which involve allegations that fall into one or more of the enumerated offenses.

Kentucky law allows individuals and corporate entities to be criminally liable for the criminal act of another under KRS 501.020 (liability for conduct of another; complicity); KRS § 502.050 (corporate liability), KRS 506.080 (criminal facilitation). However, KRS 413.249 does not enumerate Kentucky's statutes criminalizing complicity and facilitation. If the legislature had intended for KRS 413.249 to include criminal complicity or facilitation, it would have included those criminal statutes. However, two of the statutes enumerated in Section (1) of KRS 413.249 involve less direct forms of "childhood sexual assault": human trafficking (KRS 529.100)[16] and unlawful transaction with a minor in the first degree (KRS 530.064). Under KRS 530.064, a person who "knowingly induces, assists, or causes a minor to engage in . . . illegal sexual activity" is guilty of unlawful transaction with a minor. Here, whether any of the Defendants that have not been alleged to directly carry out sexual assault could fall within an enumerated offense in KRS 413.249, such as the enumerated offense under KRS 530.064, involves questions of fact not appropriate at this stage of the proceedings.

Although the Supreme Court of Kentucky has not addressed this issue, it was cited in *dicta* by the Kentucky Court of Appeals in *Roman Catholic Bishop of Louisville v. Burden*, 168 S.W.3d 414, 418 (Ky. App. 2004) and in *Knaus v. Great Crossings Baptist Church, Inc.*, No. 2009-CA-000141-MR, 2010 WL 476046, at *2 (Ky. Ct. App. Feb. 12, 2010)(unpublished).

---

[16] (5) "Human trafficking" is defined as "criminal activity whereby one (1) or more persons are subjected to engaging in: (a) Forced labor or services; or (b) Commercial sexual activity through the use of force, fraud, or coercion, except that if the trafficked person is under the age of eighteen (18), the commercial sexual activity need not involve force, fraud, or coercion." K.R.S. § 529.010.

Although not binding,[17] the observations from *Burden* and *Knaus* are relevant to this analysis.

*See Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995).

In *Burden*, an alleged victim of sexual assault sued the Archdiocese for sexual abuse during a church sponsored event by a priest who worked for the Archdiocese. *Burden*, 168 S.W.3d at 415. The Archdiocese argued KRS 413.249 applied. The Jefferson Circuit Court agreed, but held the statute of limitations was tolled under KRS 413.190. *Id.* at 418. On appeal, the Kentucky Court of Appeals only addressed whether the Jefferson Circuit Court's opinion and order was appealable. *Id.* at 418–19. The court did not address the ruling that KRS 413.249(2) applied to the Archdiocese. That said, in setting out the procedural posture of the case, the court quotes at length from a different order in that same case which held:

> Section 2 of the original Senate Bill 53 states that the statute is to be given retroactive effect, '. . . to provide uniform justice to the victims of sexual offenses who were children when the offenses occurred.' Thus, **it is clear that the focus of the General Assembly was on 'victims' rather than those whom the 'victims' might attempt to hold liable for abuse**. **However, the language of KRS 413.249**, just as that used by the legislatures of Rhode Island, Colorado and California, **appears to be directed at perpetrators and not third parties since it sets forth sexual offenses which a third party, such as a church or a school would be incapable of committing**. Based on the foregoing, it is the Opinion of this Court [Division 2, Jefferson Circuit Court] that KRS 413.249 does not apply to the cases currently before the Court.

*Id.* at 417–18 (emphasis added). The Kentucky Court of Appeals noted "[w]e believe this to be a proper interpretation of the applicable law." *Id.* at 418 n.1.

Six years later, in an unpublished decision, *Knaus*, the Kentucky Court of Appeals cited the language from the same order cited in *Burden*, stating "[w]e . . . find KRS 413.249(2) to be inapplicable, as our Courts have previously held that this statute does not apply to claims against third parties, but only to the perpetrator him or herself." 2010 WL 476046, at *2 (citing *Burden*,

---

[17] Neither *Burden* nor *Knaus* bind Kentucky courts on this matter as statements in *dicta*, *see Bd. of Claims of Ky. v. Banks*, 31 S.W.3d 436, 439 n.3 (Ky. App. 2000), and unpublished decisions are not binding, *see* Ky. R. Civ. P. 76.28(4)(c).

168 S.W.3d at 418). Knaus alleged sexual abuse by a youth minister employed by Great Crossings Baptist Church ("Great Crossings"). *Id*. at *1. Great Crossings moved to dismiss, arguing that KRS 413.249, which then had a five-year limitation, applied and had expired. *Id*. at **1–2. The Plaintiff argued the general one-year statute of limitations applied and was tolled under KRS 413.190(2) for fraudulent concealment. *Id*. at *2.

The trial court in *Knaus* permitted discovery on whether Great Crossings had concealed knowledge of abuse or obstructed investigation of abuse claims to determine whether the statute of limitations had been tolled. *Id.* at *1. The trial court held that KRS 413.249 was "inapplicable (although entitled 'Action relating to childhood sexual assault'), because the statute contains no indication that it is applicable to third parties (such as a church employer)." *Id.* at *2. It also held the one-year statute of limitation was not tolled under KRS 413.190(2) because there was no evidence of concealment or obstruction. *Id*. While the Kentucky Court of Appeals did not analyze KRS 413.249 in detail, it agreed with the trial court's ruling that KRS 413.249 did not apply to the claim against Great Crossing, citing *Burden* and stating "[w]e likewise find KRS 413.249(2) to be in applicable, as our Courts have previously held that this statute does not apply to claims against third parties, but only to the perpetrator him or herself." *Id*.

Taking all of this into account, it is likely the Supreme Court of Kentucky would determine that the statute of limitation in KRS 413.249 applies only to those claims that involve conduct that falls within at least one of the expressly enumerated criminal statutes listed in Section 1(a)-(b). Thus, the Court will apply KRS 413.249 consistent with its plain language, *i.e.*, the ten-year statute of limitations applies to claims of conduct that falls within the *enumerated statutes* defining childhood sexual assault or abuse. This determination will ultimately involve questions of fact.

### 3. Assault, Sexual Assault, Harassment, Battery Claims

Counts I of each complaint brings a claim for assault, sexual assault, harassment, and battery. B.L. brings this claim against Schuhmann. A.S., K.W., N.C., E.B., F.A., and C.F. bring this claim against Betts. N.C. also brings this claim against Wood. To the extent these claims allege sexual assault of a minor, they come within the limitations under KRS 413.249, as those claims involve allegations of childhood sexual abuse or assault.[18] That said, this may not apply to E.B.'s claim as E.B. does not allege to have been a minor.

The applicable statutes of limitations for the claims in Counts I for assault, harassment, and battery is Kentucky's one-year statute of limitations for personal injuries in KRS 413.140(1). *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 296 (Ky. Ct. App. 1993) (one-year statute of limitations applies to battery); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 727 (Ky. 2009) (recognizing sexual assault as a form of battery). Likewise, the one-year statute of limitations will apply to E.B.'s claims for sexual assault within Count I if E.B. was not a minor during the relevant timeframe.

### i. *Which version of the statute of limitations in KRS 413.249 applies?*

Having determined that the statute of limitations in KRS 413.249 applies to the sexual assault claims for the minor plaintiffs, the Court must resolve which version of the statute of limitations applies. KRS 413.239 was amended effective June 19, 2017, changing the limitations period from five years to ten years. The amendment also added time for bringing suit within ten years "of the conviction of a civil defendant for an offense included in the definition of childhood sexual abuse or childhood sexual assault." KRS 413.249(2)(d).

---

[18] Under Kentucky law "[a] specific statute of limitation preempts a general statute of limitation where there is a conflict." *Boyd v. C & H Transp.*, 902 S.W.2d 823, 824 (Ky. 1995).

Schuhmann argues that the previous five-year statute of limitation applies to B.L.'s sexual abuse/assault claims. [DE 22]. Other defendants similarly argue that the previous five-year statute of limitations should apply to B.L.'s, N.C.'s, and F.A.'s claims. [DE 14, 108, 163, 166]. This argument does not impact the claims of A.B., K.W., or C.F., as those would still be timely even if the previous five-year statute of limitation applied.

KRS 446.080 provides that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature . . . ." KRS 446.080(1). It further provides "[n]o statute shall be construed to be retroactive, unless expressly so declared." KRS 446.080(3). In other words, "Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application." *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000). Yet "a failure to state explicitly that legislation is to apply retroactively does not always mean that a court may not determine that the legislation has retroactive effect." *Commonwealth. ex rel. Conway v. Thompson*, 300 S.W.3d 152, 167 (Ky. 2009), *as corrected* (Jan. 4, 2010). The Kentucky Supreme Court has held there are no mandatory "magic words" for retroactive legislation but that the "General Assembly must expressly manifest its desire that a statute apply retroactively." *Baker v. Fletcher*, 204 S.W.3d 589, 597 (Ky. 2006). Under Kentucky law, the Court discerns the legislature's "intent for legislation to have a retroactive effect by using traditional tools for statutory interpretation." *Thompson*, 300 S.W.3d at 167. If a section of the Kentucky Revised Statutes, as literally construed, would be absurd or unreasonable, the Court may examine the original act from which the section was derived to find the true legislative intent. *Swift v. Se. Greyhound Lines,* 171 S.W.2d 49, 51 (Ky. 1943).

Here, the 2017 Amendment to KRS 413.249 does not expressly state that it is "retroactive." Senate Bill 53, which enacted KRS 413.249 in July 1998, provides:

> Section 2. *This Act shall apply to all actions which accrue before or after the date this Act becomes law*. The General Assembly finds that *retroactive effect is necessary to provide uniform justice to the victims of sexual offenses who were children when the offenses occurred.*

(emphasis added). And the current version of KRS 413.249 provides in the Compiler's Notes that the 1998 version of "Section 2 of Acts 1998, ch. 577 reads: 'This Act shall apply to all actions which accrue before or after the date this Act becomes law.'" That said, the later amendments to the statute in 2007, 2013, and 2017, all of which enlarged the opportunities for victims of sexual assault to pursue their claims, included no comment on retroactivity. KRS 413.249 (eff. June 25, 2007); KRS 413.249 (eff. June 25, 2013); KRS 413.249 (eff. June 29, 2017). The parties have not provided the Court with any legislative history for those amendments to clarify whether the legislature intended the 2017 Amendment to be retroactive.

Under Kentucky law, the rule against retroactive application without legislative expression does not apply to "remedial" statutes or statutes that relate only "to remedies or modes of procedure," as opposed to substantive rights. *Vinson*, 30 S.W.3d at 168; *Peabody Coal Co. v. Gossett*, 819 S.W.2d 33, 36 (Ky. 1991)(new standard for reopening workers' compensation awards applied retroactively). The Kentucky Supreme Court explained in *Vinson* that substantive amendments to a statute are "[a]mendments which change and redefine the out-of-court rights, obligations and duties of persons in their transactions with others . . . come within the rule that statutory amendments cannot be applied retroactively to events which occurred prior to the effective date of the amendment." *Vinson*, 30 S.W.3d at 168. On the other hand, however, statutory amendments that do not affect substantive rights, "remedial" amendments, "do not

come within the rule prohibiting retroactive application." *Id*. at 169 (citing *Peabody Coal*, 819 S.W.2d at 33).

In *Stone*, the Kentucky Court of Appeals, then the state's highest court, stated that Kentucky follows the general rule that an amendment to a statute of limitations is remedial so long as a right has not vested. *Stone v. Thompson*, 460 S.W.2d 809, 810 (Ky. 1970). (citing *Barnes v. Louisville & N.R. Co*., 140 S.W.2d 1041, 1045 (Ky. 1940)). The *Stone* court observed there "is no vested right in the running of the statute of limitations *unless* it has completely run and barred the action, so that as to existing causes of action which are not barred, the statute may be amended, suspended or repealed." *Id*. (emphasis added). This rule has generally been followed by Kentucky courts in the workers' compensation context. *Brooks v. Univ. of Louisville Hosp*., 33 S.W.3d 526, 530 (Ky. 2000); *William A. Pope Co. v. Howard*, 851 S.W.2d 460, 462 (Ky. 1993)(citing *Kiser v. Barley Mining Co*., 397 S.W.2d 56 (Ky. 1965).

Kentucky case law supports the assertion that the affirmative defense of an expired statute of limitation is a vested right of which a defendant cannot be divested through legislative action. *Lawrence v. City of Louisville*, 29 S.W. 450, 451 (Ky. 1895) (holding that, if a right to maintain an action has lapsed, "no legislative authority can reimpose the obligation" upon the defendant). This fits with the rule stated in *Barnes*, *Stone*, and *Kiser*. Thus, if any Plaintiff's statute of limitations under KRS 413.249 expired before the filing of suit, that right became vested and cannot be divested through the 2017 Amendment of KRS 413.249.

N.C. alleges he was 19 in 2013. *See* Case 157, [Sec. Am. Compl. ¶ 2]. Flaherty asserts the five-year statute of limitations in KRS 413.249 expired for N.C. in 2017, five years after turning 18. N.C. filed suit on March 8, 2017. It is not clear from the face of the complaint whether five years from N.C.'s 18th birthday ran before or after March 8, 2017. Because the

running of the statute of limitations does not appear on the face of the Complaint, the Court will deny the motions to dismiss N.C.'s complaint on this basis.[19]

Betts asserts F.A. turned 18 in 2012 and that a five-year statute of limitation expired in 2017 before the 2017 Amendment to KRS 413.249 became effective on June 29, 2017. [DE 163, Exh. A, Betts Mot. Dis. at 6544; DE 173, F.A. Resp.]. To establish F.A.'s date of birth, Betts attaches a uniform citation that states F.A.'s date of birth. [DE 163, Exh. A]. It is unclear how the uniform citation was garnered. This issue cannot be determined on the face of B.L.'s complaint, and would require the Court to decide an issue of fact. It is thus not appropriate at this stage of the proceedings and Court will deny the motions to dismiss F.A.'s complaint on this basis.

Schuhmann states that B.L. turned 18 in 2011, stating B.L.'s date of birth, but without attaching any proof. [DE 22-1, Schuhmann Sealed Mot. Dis. at 966; DE 37, B.L. Resp.]. Flaherty takes a different approach. Flaherty alleges that because the Explorer Program was open to children from the age of 14 through 19, B.L. must have been at least age 14 in 2008, and therefore would have turned 18 before the calendar year 2012. [DE 14, Flaherty Mot. Dis. at 729–30, 736; DE 31, B.L. Resp.].[20] Thus, a five-year statute of limitation under KRS 413.249 from the time B.L. turned 18 would expire sometime in 2016 before KRS 413.249 was amended in 2017, making B.L.'s claims untimely. However, as with N.C. and F.A., this determination does not appear plainly on the face of B.L.'s complaint and would require the Court to decide an

---

[19] N.C. asserts in his response this was before his birthday of that year. [DE 121 at 5449]. Assuming that to be true, the five-year limitation had not run before he filed suit. The Court also notes that even if it had run from this time-frame, the last alleged commission of an act was in 2013, and this period had not yet run when suit was filed on March 8, 2017. *See* KRS § 413.249(2)(a)–(c) (eff. June 25, 2013) ("shall be brought before which ever of the following periods last expires . . . [w]ithin five (5) years after the commission of the act or the last of a series of acts by the same perpetrator"). Thus, N.C.'s claims would be timely even under the five-year limitations period.

[20] B.L. alleges the last act of abuse occurred in 2009; thus, the five-year limitation running from the last date of injury would have expired in 2014.

issue of fact. Thus, a determination is not appropriate at this stage of the proceedings and Court will deny the motions to dismiss B.L.'s complaint on this basis.

4. <u>Statute of Limitations for Vicarious Liability Claims</u>

Each plaintiff asserts vicarious liability against Flaherty, Metro Louisville, and the Boy Scout Defendants.[21] Under Kentucky law, "[v]icarious liability, sometimes referred to as the doctrine of *respondeat superior,* is not predicated upon a tortious act of the employer [or principal] but upon the imputation to the employer [or principal] of a tortious act of the employee [or agent.]" *Patterson v. Blair,* 172 S.W.3d 361, 369 (Ky. 2005) (citation omitted). Kentucky's Supreme Court has held that an employee's "escape [from] liability for his alleged negligence because the statute of limitations had run as to him does not also insulate the employer from vicarious liability for that negligence." *Cohen v. Alliant Enterprises, Inc.,* 60 S.W.3d 536, 538 (Ky. 2001). However, the Court also determined the vicarious claim may proceed only if the plaintiff "sued the principal . . . before the statute of limitations had run as to the agent." *Id.* at 539. Thus, the Plaintiffs' vicarious liability claims will be timely under the statute of limitations if the related claim against the applicable employee/agent is timely.

5. <u>Statute of Limitations for Assault, Battery, and Harassment, Negligent Hiring/Entrustment/Training/Supervision, and Negligence</u>

Kentucky's one-year statute of limitations for personal injuries requiring the action to be "commenced within one (1) year after the cause of action accrued" governs the state claims for assault, harassment, battery, negligence, and negligent hiring/entrustment/training/supervision. KRS 413.140(1); *see, e.g.*, *DeLong v. Arms*, 251 F.R.D. 253, 255 (E.D. Ky. 2008) (one-year Kentucky statute of limitations applies to negligence); *Rigazio*, 853 S.W.2d at 296 (one-year statute of limitations applies to battery); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705,

---

[21] As discussed below, these claims will be dismissed against Metro Louisville on the ground of sovereign immunity.

727 (Ky. 2009) (recognizing sexual assault as a form of battery); *White v. Whitaker Bank, Inc.*, No. 04-CI-05225, 2008 Ky. App. Unpub. LEXIS 95, at *12 (Ky. Ct. App. 2008) (citing *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001)) ("[T]he statute of limitations to be applied to a negligent supervision claim is the limitations period applicable to the underlying tort committed by the employee.").

Under Kentucky law, an action is generally said to "accrue" when the injury occurs. *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972). Thus, the claims for assault, battery, and harassment falling outside the statute of limitations for childhood sexual assault/abuse and the claims for negligent hiring/entrustment/training/supervision, and negligence, accrued when the injury occurred. That said, Plaintiffs would be entitled to tolling of the statute under KRS 413.170(a); thus, these claims would not accrue until their eighteenth birthdays. Because this information is not established on the face of the complaints (even E.B.'s complaint, which does not make an allegation of infancy, does not establish on its face that E.B. was not a minor), it is not appropriate to consider at this stage of the proceedings.

Plaintiffs also argue that their claims were equitably tolled under KRS 413.190(2). Kentucky has codified the doctrine of fraudulent concealment by enacting KRS 413.190(2). *See Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914–15 (Ky. 1992) (the statute "is simply a recognition in law of an equitable estoppel . . . to prevent fraudulent or inequitable application of a statute of limitations"). The statute provides:

> When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by absconding *or concealing himself or by any other indirect means obstructs the prosecution of the action*, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced. But this saving shall not prevent the limitation from operating in favor of any other person not so acting, whether he is a necessary party to the action or not.

KRS 413.190(2) (emphasis added). Thus, the statute of limitations may be tolled when the defendant absconds, conceals himself, or "by any other indirect means obstructs the prosecution of the action[.]" *Id.*

The doctrine of fraudulent concealment focuses on conduct by the defendant designed to prevent discovery of either the injury or the responsible party. *McCollun v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 19–20 (Ky. 1990). The equitable estoppel doctrine precludes a defendant from asserting the statute of limitations when the defendant has taken actions "calculated to mislead or deceive and to induce inaction by the injured party." *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952). Once the "obstruction" is removed, a plaintiff has a duty to exercise reasonable diligence in pursuing his or her claims. *See Cuppy v. Gen. Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 630–31 (Ky. 1964).

Plaintiffs alleged the Defendants concealed knowledge.  *See e.g.* Case 158, [First Am. Compl. at ¶¶ 45, 50]. Defendants argue that the statute of limitations cannot be tolled for concealment because Plaintiffs "had the knowledge, or the means to obtain knowledge, of the true facts years before filing this lawsuit" and "exercised no diligence, much less reasonable diligence" in discovering their claims. *See, e.g.*, [DE 136, at 5758].  What Defendants knew and when Plaintiffs had the requisite knowledge of same, are questions of fact better reserved for trial or upon a summary judgment motion. *R.T. Vanderbilt Co. v. Franklin*, 290 S.W.3d 654, 659 (Ky. App. 2009) ("If there is a factual dispute regarding the reasonable diligence of the plaintiff, the question is properly submitted to the jury for resolution."). At this early stage, whether equitable tolling applies to claims subject to the one-year statute of limitations is premature. Thus, the Court will deny the motions to dismiss the assault, battery, harassment, and other negligence-based claims on grounds of statute of limitations.

6. Statute of Limitations for Claims of Intentional Infliction of Emotional Distress, Fraud by Omission/Duty to Disclose, Fraudulent Concealment, and Failure to Report

Kentucky's five-year statute of limitations under KRS 413.120 governs the state law claims for intentional infliction of emotional distress, fraud by omission/duty to disclose, fraudulent concealment, and failure to report as mandated by KRS 620.030 and KRS 620.040. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) ("There is a right to be free of emotional distress arising from conduct by another. Because the essence of the tort is the interference with this right and not whether any bodily harm results, the five-year statute of limitations applies."); KRS § 413.120(11) (requiring commencement within five years for "[a]n action for relief or damages on the ground of fraud . . ."); KRS 413.120(2) (requiring commencement within five years for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability"). Thus, actions on these claims must "be commenced within five (5) years after the cause of action accrued." KRS 413.120.

Under Kentucky law, Plaintiffs' intentional infliction of emotional distress claims and failure to report will accrue when the injury occurred. *Caudill*, 481 S.W.2d at 669. Thus, those claims must be commenced within five years after the injury occurred, unless the action is tolled. Thus, the intentional infliction of emotional distress ("IIED") claims for A.S., K.W., N.C., E.B., and C.F. would all be timely filed within five years of the last date of injury without considering tolling under KRS 413.170(a)(tolling during infancy). B.L. alleges the last act of sexual assault/abuse occurred in 2009. [DE 1-4, Sec. Am. Compl. ¶ 2]. A such, the claim for IIED accrued in 2009 and the five-year statute of limitation ran in 2014. Similarly, F.A. alleges the last act of sexual assault/abuse occurred in 2010. [DE 1-1, First Am. Compl. ¶ 69]. As a result, the claim for IIED accrued in 2010, and the five-year statute of limitation ran in 2015. Even so,

B.L. and F.A. would also be entitled to tolling of the statute under KRS 413.170(a) and thus the claims would not accrue until their eighteenth birthdays. Because this information is not established on the face of B.L.'s and F.A.'s complaints, the Court will deny the motions to dismiss the IIED claims and failure to report claims on grounds of statute of limitations.

As to the failure to report claims, there are issues of fact relating to potential equitable tolling. For instance, in *Roman Catholic Diocese of Covington v. Secter*, the Kentucky Court of Appeals held that the statute of limitations was tolled against the Diocese. The Diocese concealed its knowledge of the teacher's sexual abuse, which obstructed the alleged victim, Secter, from discovering his cause of action against the Diocese. 966 S.W.2d 286, 290 (Ky. Ct. App. 1998). The court found the Diocese concealed its knowledge of the teacher's behavior before the time that Secter was abused and continued to receive reports of sexual abuse of other students during part of the time Secter was abused. *Id.* Further, the court found the Diocese had violated its statutory duty to report child abuse, noting "where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct." *Id.* (quoting *Munday,* 831 S.W.2d at 915). The court held "[t]he Diocese failed to comply with this duty, and such failure constitutes evidence of concealment under KRS 413.190(2)." *Id.* As this stage of the proceeding, whether equitable tolling would apply to the failure to report claims involves issues of fact.

Claims for fraud do not accrue until discovery of the fraud but must be commenced within ten years after perpetration of the fraud. KRS 413.130(3). Plaintiffs' discovery of the alleged fraud is an issue of fact. As discussed above, whether Defendants knew of the alleged abuse and failed to report it, and when Plaintiffs had the requisite knowledge of same, are questions of fact better reserved for trial or upon a summary judgment motion. *Franklin*, 290

S.W.3d at 659 ("If there is a factual dispute regarding the reasonable diligence of the plaintiff, the question is properly submitted to the jury for resolution."). Accordingly, Court will deny the motions to dismiss the claims of fraud by omission/duty to disclose and fraudulent concealment on grounds of statute of limitations.

      7.  <u>Statute of Limitations for Federal Claims under 20 U.S.C. 1681(a) and 42 U.S.C. 1983</u>

42 U.S.C. § 1983 and 20 U.S.C. § 1681 do not provide their own statutes of limitations. As a result, courts use the statute of limitations in the general or residual statute for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *partially superseded by statute as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) (§ 1983 claims); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) (Title IX claims); *Bonner v. Perry*, 564 F.3d 424, 430–31 (6th Cir. 2009).[22] Courts adopt the tolling provisions that apply to that statute unless they are inconsistent with the federal policy underlying the statute. *McCune v. Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988). Thus, the Court will apply Kentucky's one-year statute of limitations for personal injury under KRS 413.140 to Plaintiffs' claims under 42 U.S.C. § 1983 and 20 U.S.C. § 1681. However, as discussed above, when these claims accrued

---

[22] While state law governs the statute of limitations for § 1983 actions, federal standards govern when the statute begins to run. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citing *Wilson*, 471 U.S. at 267). In the present cases, claims accrual is determined by federal law, and, ordinarily, the court will apply the "discovery rule" to establish the date on which the statute of limitations began to run, "*i.e.*, the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action." *Sharpe*, 319 F.3d at 266 (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (quoting *Sevier*, 742 F.2d at 273). "In applying a discovery accrual rule . . . discovery of the injury, not discovery of the other elements of the claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Thus, "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001) (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)).

and whether they were tolled involve questions of fact. Thus, Court will deny the motions to dismiss on grounds of statute of limitations.

### C. Insufficient Pleading

Defendants move to dismiss based on various pleading insufficiencies in Plaintiffs' complaints. The Court will discuss each argument below.

### 1. Childhood Sexual Assault Claims

Along with the sexual assault claims the Plaintiffs make in Count I against the perpetrator Defendants, the Plaintiffs (except E.B.), make separate claims for "childhood sexual abuse" and "childhood sexual assault" under KRS 413.249 against all Defendants. Betts moves to dismiss the childhood sexual assault and abuse claims made by B.L. under KRS 413.249, arguing that KRS 413.249 is not a stand-alone tort, but merely creates a specific statute of limitations for claims of childhood sexual assault and abuse. *See, e.g.*, [DE 12, at 685].

KRS 413.249 is part of chapter 413, "Limitation of Actions", within the Kentucky Revised Statutes. Although Section (1) the statute defines "childhood sexual assault" and "childhood sexual abuse," this is for determining which civil actions the longer statute of limitations in Section (2) of the statute applies. No language in KRS 413.249 suggests that it creates a separate cause of action apart from a claim of sexual assault. Statutory rights of action, instead, are found under chapter 411, "Rights of Action and Survival of Actions," of the Kentucky Revised Statutes. Accordingly, the Court will dismiss each of the Plaintiffs' claims for childhood sexual assault and abuse made under KRS 413.249 against the other defendants.[23]

---

[23] If the intention of these counts was to hold the defendants not named in Count I liable for the alleged sexual assault or receive the benefit of the ten-year statute of limitations in KRS 413.249(2), this intention must be asserted by alleging a claim against those defendants for one of the activities specifically enumerated in KRS 413.249.

2. <u>KRS 344.040 and KRS 344.070—Kentucky Civil Rights Act Claims</u>[24]

Metro Government moves to dismiss claims asserted by B.L., A.S., K.W., N.C., and C.F. for violating the Kentucky Civil Rights Act ("KCRA") for age and sex discrimination under KRS 344.040 and KRS 344.070.[25] [DE 11, 62, 80, 105, 185]. Plaintiffs allege they were required to perform sexual acts in exchange for benefits and progression in the Explorer Program. *See, e.g.*, Case 151, [Sec. Am. Compl. ¶ 139]; Case 152, [Ver. Compl. ¶ 124]; Case 152, [First Am. Compl. ¶ 144]; Case 157, [Sec. Am. Ver. Compl. ¶ 135]. Plaintiffs' complaints allege the Explorer Program was "for career education" and included police officers educating the participants in character-building, obedience, and various other life skills, as well as activities including "meetings, jobbing, trips, ride-alongs, and community service under the control of the Explorer's Program, and as youth explorers who were transported to and participated in the Kentucky Law Enforcement Explorer Academy . . . ." *See, e.g.*, Case 151, [Sec. Am. Compl. ¶¶ 35, 43, 46].

*i. Age Discrimination under KRS 344.040 and KRS 344.070*

Both KRS 344.040 and KRS 344.070 are expressly limited to discrimination against those "age forty (40) and over." KRS § 344.040(1)(a); KRS § 344.070. To state a claim under KRS 344.040 for age discrimination, Plaintiffs must state facts, if true, that would establish that Plaintiffs were: (1) 40 years or older; (2) discharged; (3) qualified for the position from which they were discharged; (4) and replaced by a significantly younger person. *Williams*, 184 S.W.3d at 496 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). While the prima

---

[24] Kentucky courts interpret the civil rights provisions of KRS Chapter 344 as consistent with the applicable federal anti-discrimination laws. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citing *Brooks v. Lexington–Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 802 (Ky. 2004)); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Bank One*, 52 S.W.3d at 544; *Ammerman*, 30 S.W.3d at 797–98.

[25] Plaintiffs E.B. and F.A. did not bring claims under the KCRA.

facie elements do not constitute a pleading standard, a plaintiff must allege specific facts necessary to show that they are entitled to relief against this legal backdrop. *See Swierkiewicz*, 534 U.S. at 512; *see also Twombly*, 550 U.S. at 570. These Plaintiffs allege they were minors at the time of the allegations in the complaints. Accordingly, Plaintiffs have not pled a plausible claim for age discrimination under KRS 344.040 and KRS 344.070.

### ii. Sex Discrimination Under KRS 344.040

The Plaintiffs assert claims for *quid pro quo* sexual harassment on the basis of sex discrimination under KRS 344.040, entitled "Unlawful discrimination by employers . . . ," which provides:

(1) It is an unlawful practice for an **employer**:[26]

(a) **To fail or refuse to hire**, or **to discharge** any individual, **or otherwise to discriminate** against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, **sex**, **age forty (40) and over**, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking

KRS § 344.040(1)(a) (emphasis added). KRS 344.040(a)(1) thus prohibits an "employer" from failing to hire or refusing to hire an individual, or discharging an individual, for any of the enumerated discriminatory reasons.

The Kentucky Supreme Court has determined that KRS 344.040 "afford[s] protection from discrimination only to those in an employer-employee relationship." *Brooks v. Lexington-Fayette Urban Cty. Housing Auth.*, 132 S.W.3d 790, 811 (Ky. 2004) (Keller, J., concurring) *as modified on denial of reh'g* (May 20, 2004) (quoting *Bank One, Kentucky v. Murphy*, 52 S.W.3d 540, 547 n.2 (Ky. 2001) (Keller, J., concurring in part and dissenting in part))*; see also Butler v.*

---

[26] The KCRA defines an "employer" as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such a person [.]" KRS 344.030(2).

*Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) ("An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant."). None of the Plaintiffs allege that discrimination occurred in the employee-employer context, or that Metro Government was their employer. Thus, even taking the Plaintiffs' allegations as true, the claims under KRS 344.040 do not allege sufficient facts to state a claim for relief for gender discrimination against Metro Government under KRS 344.040.

### iii. Sex Discrimination Under KRS 344.070

KRS 344.070, [d]iscrimination in apprenticeship or training, provides:

> It is an unlawful practice for an **employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs** to discriminate against an individual because of race, color, religion, national origin, **sex**, or age forty (40) and over, or because the person is a qualified individual with a disability **in admission to or employment in, any program established to provide apprenticeship or other training.**

KRS § 344.070 (emphasis added).[27] KRS 344.070 thus prohibits "employer[s]," "labor organization[s]," and "joint labor-management committee[s] controlling apprenticeship or other training or retraining, including on-the-job trainings programs" from discriminating "in admission to or employment in" "any program established to provide apprenticeship or other training." Accordingly, for Metro Government to be subject to KRS 344.070, it must be an employer, labor organization, or joint labor-management committee.

---

[27] KRS 344.070 is virtually identical to its federal counterpart: "It shall be an unlawful **employment practice** for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d)(emphasis added).

As discussed above, Plaintiffs do not allege that Metro Government was their employer. As a result, Metro Government would not be subject to KRS 344.070 as an employer.

Nor do Plaintiffs allege a factual basis to support that Metro Government was a "joint labor-management committee." Neither the KCRA nor its federal counterparty define the term "joint labor-management committee."[28] Federal case law reflects that "such a committee would include both management and labor components." *Salas v. Indep. Elec. Contractors Inc.*, No. 11-1748 RAJ, 2013 WL 1898249, at *3 (W.D. Wash. May 7, 2013), *aff'd*, 603 F. App'x 607 (9th Cir. 2015) (citing *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 535–36 (9th Cir. 1981)); *Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 652 (7th Cir. 2006) (Section 2000e–2(d) "makes both employers and unions answerable for the administration of joint training and apprenticeship programs."). This case simply does not involve a "joint labor-management committee."

Finally, the Plaintiffs do not allege a factual basis to support that Metro Government was a "labor organization." KRS § 344.030 defines "labor organization" as:

> "Labor organization" means a labor organization and an agent of such an organization, and includes an organization of any kind, an agency or employee representation committee, group, association, or plan so engaged in which **employees** participate and which exists for the purpose, in whole or in part, of dealing with **employers** concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of **employment**, and a conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

Ky. Rev. Stat. Ann. § 344.030 (West). Thus, by its plain terms, a "Labor organization" must be in the employment context as it is an organization "in which employees participate." Again, Plaintiffs do not allege to have been employees of Metro Government.

---

[28] 41 U.S.C. § 2000e-2(d) does not define the term "joint labor-management committee."

Plaintiffs neither allege that discrimination occurred in the employee-employer context nor that Metro Government was their employer, a joint labor-management committee, or labor organization. Thus, even taking the Plaintiffs' allegations as true, the claims under KRS 344.070 do not allege appropriate facts to state a claim for relief for gender discrimination against Metro Government under KRS 344.070.

### 3. Intentional Infliction of Emotional Distress

All Defendants except Metro Government move to dismiss Plaintiffs' IIED claims. Defendants argue that these claims are precluded by the other tort claims alleged. The Boy Scout Defendants and Wood further argue Plaintiffs' IIED claims are inadequately pled.

#### i. *Availability of Other Tort Claims*

Kentucky courts characterize IIED as a gap-filler tort claim. *Rigazio*, 853 S.W.2d at 299. Under Kentucky law, "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* Thus, "a plaintiff cannot maintain *both* a negligence claim and an [outrage] claim based on a single set of facts." *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012). The Court must eventually inquire "whether the facts support simple or gross negligence leading to a personal injury, some other specific intent tort, or a claim that conduct was intended or the actor should have known was likely to cause emotional distress with any physical results being consequential." *Id.* However, while IIED is a gap-filler tort, "[t]his is not to say that it cannot be pleaded alternatively." *Id.* at 582; *see also Kustes v. Lexington-Fayette Urban Cty. Gov't*, No. 5:12–323, 2013 WL 4776343, at *2 (E.D. Ky. Sept. 3, 2013) ("A plaintiff can, however, plead an IIED claim in the alternative to a traditional tort claim.").

Plaintiffs have alleged that Defendants intentionally or recklessly caused severe emotional distress. While the facts alleged may also support Plaintiffs' traditional tort claims, it may be that certain Defendants acted only with an intent to cause emotional harm. At this early stage, the Plaintiffs' assertions must be assumed true. The mere fact that Plaintiffs have alleged both traditional tort claims and IIED claims is not grounds for dismissal of their IIED claims. Thus, the Court will permit Plaintiffs' IIED claims to proceed at this stage of the proceedings.

*ii. Pleading IIED*

Some Defendants argue Plaintiffs have not sufficiently pled IIED. *See, e.g.*, [DE 79, Wood Mot. Dis. at 3552]. The Boy Scout Defendants argue Plaintiffs have failed to plead the requisite mental state to support a claim of IIED. [DE 15, 64, 84, 106, 136, 167].

The Kentucky Supreme Court has adopted the Restatement (Second) of Torts definition of IIED:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to others results from it, for such bodily harm.

*Craft*, 671 S.W.2d at 251 (quoting Restatement (Second) of Torts § 46)). To recover for IIED, a plaintiff must establish:

(1)    the wrongdoer's conduct was intentional or reckless;

(2)    the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

(3)    there must be a causal connection between the wrongdoer's conduct and the emotional distress; and

(4)    the distress suffered must be severe.

*Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000).

The Boy Scout Defendants argue that the Plaintiffs make "conclusory allegations that all defendants acted deliberately" but do not "provide any facts supporting an inference that the LFL Defendants acted with such a mental state." *See, e.g.*, [DE 84, Boy Scout Defendants Mot. Dis. at 3658]. For IIED, the wrongdoer's conduct can be "intentional" or "reckless." *Osborne*, 31 S.W.3d at 913. Plaintiffs allege that Defendants' conduct was "done . . . deliberately with the goal of causing extreme emotional distress . . . and/or was done *with reckless indifference* to the Plaintiff's right and well-being . . . ." *See, e.g.*, Case 152, [Ver. Compl. at ¶ 30] (emphasis added). Plaintiffs allege that the Boy Scout Defendants administered the Explorer Program with reckless indifference to the rights and well-being of the Plaintiffs. They allege the Boy Scout Defendants had knowledge that Explorers were at risk of sexual molestation, created extensive policies to prevent same, but did not enforce these policies and routinely allowed violations of sexual abuse policies around the country, including in the Explorer Program. *See, e.g.*, Case 153, [First Am. Compl. ¶¶ 36, 66–70]. At this stage of the proceedings, Plaintiffs' allegations could support the inference that the Boy Scout Defendants conduct was "reckless."

Wood argues that B.L, K.W., F.A., and C.F. do not sufficiently plead outrageous and intolerable conduct. *See, e.g.*, [DE 10, Wood Mot. Dis. at 639]. Conduct is only actionable under the tort of IIED if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stringer v. Wal–Mart Stores, Inc.,* 151 S.W.3d 781, 789 (Ky. 2004),[29] *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 275 (Ky. 2014). It is the type of conduct that would lead an average member of the community to exclaim, "Outrageous!" when he hears

---

[29] Examples of the conduct sufficient to warrant recovery for IIED and insufficient to warrant recover for IIED are set for in *Stinger,* 151 S.W.3d at 790-91.

the facts of the case. *Id.* "Mere insults, indignities, threats, annoyances, petty oppressions, [and] other trivialities" do not meet this standard. *Id*

B.L. alleges that Wood, along with several other Defendants, confronted her about Schuhmann's sexual abuse while at an LMPD Explorer Camp in Atlanta, Georgia. Case 151, [Sec. Am. Compl. ¶¶ 49–54]. B.L. alleges she was ordered to leave her room and placed on a bench in a courtyard. *Id*. at ¶ 51. She requested her parents and/or an attorney be present during the interrogation. *Id*. B.L. alleges the "interrogation lasted for approximately one hour and was so severe and traumatic that it caused B.L. to become hysterically upset, causing her to sob and become extremely anxious. This is due to the fact that Defendant Schmidt and Betts were verbally abusive, victim blaming and shaming, belligerently berating B.L., and blaming her for her victimization and abuse at the hands of the Defendant Schuhmann. Defendant Flaherty also began questioning B.L. at this point." *Id.* at ¶ 52. B.L. alleges that after the interrogation, Wood, along with several other Defendants, forced B.L. to take them to her hotel room, searching her room and personal belongings and taking her phone. *Id*.

K.W. alleges that she disclosed to Wood that Betts had been abusing her. Case 153, [First Am. Compl. at ¶ 49]. She further alleges that in 2013 Wood participated at some level with a "sting" operation in which Betts asked to meet K.W. in an isolated location. *Id.* at ¶ 51. C.F. likewise alleges that Wood knew of Betts's sexual abuse of F.A. and failed to report it; however, C.F. seeks to file a second amended complaint, which adds claims against Wood for assault, sexual assault, harassment, and battery. As discussed below, the Court will permit the filing of C.F.'s second amended complaint. For that reason, this argument is moot with regard to the allegations in C.F.'s previous complaint. Given these allegations, it would be premature to

determine these Plaintiffs' IIED claims against Wood must be dismissed as a matter of Kentucky law. Thus, Wood's motions to dismiss K.W.'s and C.F.'s IIED claims are denied.

F.A. alleges Wood knew of Betts's sexual abuse of F.A. and failed to report it. Case 176, [First Am. Compl. at ¶ 43]. This allegation alone would fail to state a plausible claim for relief for IIED against Wood as it is more analogous to the second category of cases outlined in *Stringer* where conduct was found insufficiently "outrageous." However, F.A. alleges that all Defendants "suppressed, hid, fraudulently concealed, and caused allegations of sexual abuse to remain undiscovered . . . ." *Id.* at ¶ 59. This allegation, if true, could plausibly rise to the level of conduct sufficiently outrageous. As a result, Wood's motion to dismiss F.A.'s IIED claim is denied.

### 4. Fraudulent Omission and Fraudulent Concealment Claims

The Boy Scout Defendants and Betts argue that Plaintiffs fail to sufficiently plead their fraud claims. [DE 163; DE 167]. Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud allegations with particularity. Fed. R. Civ. P. 9(b); *see also United States ex rel. Bledsoe v. Cmty. Health Sys.*, *Inc.*, 342 F.3d 634, 641 (6th Cir. 2003). At a minimum, plaintiffs must allege: (1) the time, place, and content of any allegedly false representations; (2) the fraudulent scheme; (3) the defendant's fraudulent intent; and (4) the resulting injury. *Id.* at 643 (internal quotation marks and citations omitted). "And while mental states may be alleged generally . . . the allegations must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Republic Bank & Tr. Co. v. Bear, Stearns & Co.*, 707 F. Supp. 2d 702, 707 (W.D. Ky. 2010), *aff'd*, 683 F.3d 239 (6th Cir. 2012) (internal quotation marks and citations omitted).

"Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988). The Sixth Circuit's "liberal reading" of Rule 9(b) stems from the "influence of Rule 8." *Terrell v. Tecsec, Inc.*, No. 06-310, 2007 WL 2670047, at *7 (E.D. Ky. Sept. 7, 2007); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8."). And "[c]ourts have held that [Rule 9(b)] may be relaxed where information is only within the opposing party's knowledge." *Michaels*, 848 F.2d at 680 (citations omitted) (collecting cases). This is particularly true when there has been no discovery. *Id.*

Plaintiffs make two allegations of fraud against all Defendants. First, Plaintiffs allege fraud by omission. *See, e.g.*, Case 151, [Sec. Am. Compl. at ¶¶ 108–13]. Second, Plaintiffs allege fraudulent concealment. *See, e.g.*, *id.* at ¶¶ 114–23. As to the first allegation, Rule 9(b)'s pleading requirements are relaxed because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007). Thus, "[w]here the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud. For example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (internal quotation marks and citation omitted); *see also Allstate Indem. Co. v. Dixon*, 304 F.R.D. 580, 584 (W.D. Mo. 2015); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012).

Plaintiffs assert that the Boy Scout Defendants "kept their decades of knowledge of child sexual abuse [in the Explorer Program and other programs run through BSA] hidden from" scouts and the public. *See, e.g.*, Case 151, [Sec. Am. Compl. at ¶ 110]. Specifically, Plaintiffs assert that Defendants "have long known that underage Explorers are at risk of being sexually molested by the police officers who are supposed to be teaching them about police work." *See, e.g.*, *id.* at ¶ 37. To bolster this claim, Plaintiffs allege that Defendants have, since as early as 1920, regularly received reports detailing sexual abuse allegations tied to the Boy Scouts. *See, e.g.*, *id.* at ¶¶ 61–62. Plaintiffs assert that BSA then created a system to track these transgressions and that by the time Plaintiffs joined the Explorer Program, Defendants knew that Defendants' agents "posed a danger to minor boys and girls because there had been a longstanding, consistent, and problematic history with advisers sexually abusing Youth Explorer cadets." *See, e.g.*, *id.* at ¶¶ 65–68. Plaintiffs allege that Defendants perpetrated a fraud by failing to inform the public and potential cadets about this known history of abuse, which induced Plaintiffs to participate in the Explorer Program. *See, e.g.*, *id.* at ¶¶ 108–13.

Considering Rule 9(b)'s relaxed pleading requirements for fraud-by-omission claims and the inherent difficulties in asserting the absence of a fact, Plaintiffs' allegations sufficiently provide a framework for relevant discovery and alert Defendants "'as to the particulars of their alleged misconduct'" so that they may respond to the complaint. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *Bledsoe*, 501 F.3d at 503). Plaintiffs have detailed the allegedly fraudulent omission, noted the specific Defendants involved in the alleged scheme, explained why the omissions were fraudulent, and identified the injury caused by those omissions. Only Defendants possess additional relevant facts, and discovery has just begun. *See*

*Michaels*, 848 F.2d at 680. Plaintiffs therefore have sufficiently pleaded fraud by omission to satisfy Rule 9(b).

As to Plaintiffs' fraudulent-concealment claims, allegations of "an affirmative act or misrepresentation by the defendant is required; mere silence on the part of the defendant is not enough." *Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 395 (6th Cir. 2015) (internal quotation marks and citation omitted); *see also Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). Plaintiffs allege that Defendants made material misrepresentations "regarding the nature of the Explorer's [sic] Program, including but not limited to the extent of child sexual abuse in the program." *See, e.g.*, Case 151, [Sec. Am. Compl. at ¶ 115]. But Plaintiffs fail to point to Defendants' specific affirmative acts or misrepresentations, including the time, place, and content of any allegedly false representations. Instead, Plaintiffs simply assert that Defendants knew of past transgressions and failed to comply with reporting requirements. *See, e.g.*, *id.* at ¶¶ 73–75. This fails to satisfy Rule 9(b)'s standard for fraudulent concealment, which is not subject to the relaxed standards of fraud by omission and requires parties to plead specific facts. *See Estate of Abdullah*, 601 F. App'x at 395; *Bledsoe*, 342 F.3d at 643.

For these reasons, Defendants' motions to dismiss are granted as to the fraudulent-concealment claim and denied as to the fraud-by-omission claim. However, Plaintiffs have requested to file an amended complaint to re-plead any defective fraud claim. [DE 174 at 7175]. Because discovery has only just begun, and no party will be prejudiced by allowing Plaintiffs to file an amended complaint, the Court grants Plaintiffs' request. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974) (noting that the determination of whether the

circumstances of a case are such that justice would require the allowance of an amendment is committed to the sound discretion of the district court). The Court thus orders Plaintiffs to file any amended complaints within twenty (20) days of this Order's issuance.

### 5. Claim for Violation of 42 U.S.C. § 1983

Betts argues Plaintiffs' claims for violating 42 U.S.C. § 1983 are not properly pled because they do not cite a constitutional provision or statute securing their purported constitutional rights, and alternatively, moves for a more definite statement citing the specific section or amendment of the Constitution which is alleged to be violated. *See, e.g.*, [DE 139-1, Betts Mot. Dis. at 5801–02]. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

Because § 1983 "is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced," the Court's "first task . . . is to identify the specific constitutional or statutory rights allegedly infringed." *Meals v. City of Memphis*, 493 F.3d 720, 727–28 (6th Cir. 2007). "That [a plaintiff] asserts claims under various constitutional provisions does not control [the Court's] inquiry." *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009). "Rather, the critical question is whether the 'legal norms'

underlying those claims implicate clearly established constitutional rights." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)). [30]

Plaintiffs allege that they were deprived of their rights, privileges, and immunities secured by the "Fourteenth Amendment to the Constitution of the United States and/or such other Amendments as may be applicable to the facts alleged herein as well as the Kentucky Constitution . . . ." *See* Case 151, [Sec. Am. Compl. at ¶ 77] (Fourth and Fourteenth Amendments); Case 152, [Ver. Compl. at ¶ 6] (Fourteenth Amendment); Case 153, [First. Am. Compl. at ¶ 82] (Fourteenth Amendment); Case 157, [Sec. V. Am. Compl. at ¶ 66]; Case 158, [Frist Am. Compl. at ¶ 53] (Fourteenth Amendment); Case 176, [First Am. Compl. at ¶ 65] (Fourteenth Amendment). Plaintiffs further allege they were deprived of their "rights, privileges and immunities secured by the United States Constitution, or other applicable provisions of the United States Constitution, or state law rights and privileges found in Kentucky's Constitution and tort laws." *See* Case 151, [Sec. Am. Compl. at ¶ 154]; Case 152, [Ver. Compl. at ¶ 139]; Case 153, [First Am. Compl. at ¶ 159]; Case 157, [Sec. V. Am. Compl. at ¶ 150]; Case 158, [First. Am. Compl. at ¶ 103]; Case 176, [First Am. Compl. at ¶ 134]; Case 306, [First Am. Compl. at ¶ 144]. These deprivations included, but were not limited to the following: the right to privacy, the right to personal integrity, the right to be free from unwanted physical contact, the fright to be free from unwanted intrusion upon his or her person, the right to be free from physical assault and battery, and the right to be free from unwanted sexual contact. *Id.*

"[T]he Due Process Clause of the Fourteenth Amendment bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Lillard*, 76 F.3d at 724 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The Sixth Circuit has recognized

---

[30] 42 U.S.C. § 1983 does not cover official conduct allegedly violating state law and does not cover state constitutional violations that are not also federal constitutional deprivations. *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989).

two types of substantive due process rights: (1) claims asserting denial of right, privilege, or immunity secured by Constitution or by federal statute, and (2) claims directed at official acts which may not occur regardless of procedural safeguards accompanying them. *Id.*

Plaintiffs argue it is the second type of due process claim at issue. *See, e.g.*, [DE 149, E.B. Resp. at 6164]. The second type of claim does not "require[] a claim that some specific guarantee of the Constitution apart from the due process clause be violated . . . . [t]his is a substantive due process right akin to the 'fundamental fairness' concept of procedural due process." *Lillard*, 76 F.3d at 724 (citing *Wilson v. Beebe*, 770 F.2d 578, 586 (6th. Cir. 1985)). These claims are based on the substantive due process right to bodily integrity. *Id.*; *see also United States v. Morris*, 494 F. App'x 574, 581 (6th Cir. 2012) ("[I]t is more than obvious that the right to not be raped by a law enforcement officer lies at the core of the rights protected by the Due Process Clause."). The Supreme Court recognized long ago that "[n]o right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891). The Sixth Circuit has noted:

> To be sure, the magnitude of the liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort; it is an unjustified intrusion that strips the very essence of personhood. If the 'right to bodily integrity' means anything, it certainly encompasses the right not to be sexually assaulted under color of law. This conduct is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause.

*Doe v. Claiborne Cty. ex rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 506–07 (6th Cir. 1996).

The second category of claims requires only an asserted violation of the Due Process Clause, and exists when official conduct is arbitrary or shocks the conscience of the court.

*Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012). In *Claiborne County*, the Sixth Circuit found a substantive due process violation against a school teacher when the teacher sexually harassed and raped a minor student. *Claiborne Cty.*, 103 F.3d at 506–07.

Plaintiffs have sufficiently alleged a violation of a constitutional right under the Fourteenth Amendment to be free from sexual abuse. Betts argues that even if Plaintiffs have sufficiently alleged a violation of a constitutional right, the Plaintiffs' § 1983 claims fail because "there is no evidence that he acted maliciously . . . no evidence of sadism or bad intent . . . Mr. Betts' alleged conduct does not 'shock the conscience' . . . the Plaintiff has not therefore established a prima facie case of deprivation of . . . substantive due process . . . ." *See, e.g.*, [DE 158, Betts Reply at 6398–99]. Whether there is sufficient evidence that Betts engaged in the conduct alleged raises issues of fact not appropriate at this stage of the litigation. The issue is not whether such alleged conduct shocks the conscience. *Claiborne Cty.*, 103 F.3d at 506–07 (sexual abuse of a student by a teacher is a constitutional deprivation, which implicitly indicates that the abuse shocks the conscience). Thus, Betts's motions to dismiss Plaintiffs' § 1983 claims are denied.

### D. Qualified Immunity

Defendants Flaherty, Schmidt, Paris, Scott, and Gelhausen argue Plaintiffs' claims against them should be dismissed based on the doctrine of qualified immunity.

> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (internal quotation and citations omitted). There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss on qualified immunity grounds that differs from the plausibility standard established under *Iqbal.*

*Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*," *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

"Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 521–22 (Ky. 2001). But "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* at 522. Thus, qualified immunity depends "on the function performed" and whether the official acted in "good faith." *Id.* at 521. When an official violates clearly established constitutional or statutory rights of which the official should have known, qualified immunity will not protect them from suit. *Mitchell*, 472 U.S. at 524.

Acts involving supervision and training are consistently held to be discretionary functions. *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006); *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006). Whether qualified immunity shields individuals from suit under Kentucky law depends on whether their acts of supervision and training were performed in good

or bad faith. *Nichols*, 26 F. Supp. 3d at 642. Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.,* objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

Taking Plaintiffs' factual allegations as true and drawing all inferences in their favor, *Wesley*, 779 F.3d at 427, Plaintiffs' claims survive, and qualified immunity does not apply at this stage of the case. All that Plaintiffs must do is "allege [ ] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Handy–Clay*, 695 F.3d at 538 (quoting *Twombly*, 550 U.S. at 555)). Plaintiffs allege that Defendants Flaherty, Schmidt, Paris, Scott, and Gelhausen violated their statutory duty to report sexual abuse and were involved in a conspiracy to cover up the abuse. Whether these Defendants performed their acts in good faith or bad faith is a question of fact. For these reasons, qualified immunity cannot be determined at this stage of the proceedings, and the Defendants' motions for the dismissal on this basis is denied.

### E. Sovereign Immunity

Defendant Metro Government argues the Plaintiffs' state law claims, other than their Kentucky Civil Rights Act claims,[31] should be dismissed based on the doctrine of sovereign immunity. "When assessing whether defendants are entitled to immunity from state law tort liability, the court must apply Kentucky rules of sovereign immunity." *Ivey v. McCreary Cty. Fiscal Court*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013). Under Kentucky law, county governments are protected by sovereign immunity. *Schwindel v. Meade Cty.*, 113 S.W.3d 159,

---

[31] Metro Government points out that Kentucky's legislature has expressly waived its immunity for claims brought under KRS 344.040, so sovereign immunity does not apply to those claims. [DE 200, Metro Gov. Reply at 8137].

163 (Ky. 2003). "A county 'is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity.' . . . Therefore, absent an explicit statutory waiver, Metro Government is entitled to sovereign immunity." *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008) (citing *Cullinan v. Jefferson Cty.*, 418 S.W.2d 407, 408 (Ky. 1967), *overruled on other grounds by Yanero*, 65 S.W.3d at 527)). "And absent a legislative waiver, county governments cannot be held vicariously liable for the ministerial acts of their employees." *Cordle v. Clark*, No. 6:17-23-DCR, 2018 WL 988075, at *8 (E.D. Ky. Feb. 20, 2018).

Plaintiffs argue that whether a waiver of immunity can be implied and whether it exists is a question of fact that must be explored in discovery. *See, e.g.*, [DE 194, C.F. Resp. at 7882]. Plaintiffs argue that "[a]ny number of documents that would be produced in discovery, such as the LMPD's contracts and its policies and procedures could reveal a waiver." *Id.* Plaintiffs cite *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 132 n.2 (Ky. 2004), for the proposition that the waiver from the legislature can be implied:

> The waiver, however, does not have to be direct. The General Assembly may delegate the authority to waive immunity to the individual county governments. *See Taylor v. Knox County Board of Education,* 292 Ky. 767, 167 S.W.2d 700, 702 (1942). (The Legislature may empower its political subdivisions to purchase liability insurance for the protection of citizens injured through negligence attributable to the political subdivision.).

*Id.* Metro Government argues that waiver cannot be implied and may only be found expressly in a statute. [DE 200, Metro Gov. Reply at 8137]. Metro Government cites the Kentucky Supreme Court's decision in *Withers v. University of Kentucky*, 939 S.W.2d 340, 344 (Ky. 1997), which held "[w]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable

construction.'" *Id.* (citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). Metro Government also cites the Kentucky Court of Appeal's decision in *Jewish Hospital* that "absent an explicit statutory waiver, Metro Government is entitled to sovereign immunity." 270 S.W.3d at 907. Plaintiffs cite no statutory text that either expressly or overwhelmingly impliedly shows waiver of sovereign immunity. Thus, the Plaintiffs' state law claims, except for their Kentucky Civil Rights Act claims (which are analyzed separately), are dismissed against Metro Government.[32]

## F. Official Capacity Claims

Metro Government has also moved to dismiss the claims against its officers in their official capacities. Plaintiffs do not object to this request so long as Metro Government is left a party at this stage of the proceedings. *See, e.g.*, [C.F. Resp. at 7882]. Plaintiffs provide no authority or support for position. The United States Supreme Court has held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 67 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). So, a suit against a government agent in their official capacity equates to a suit against the government agency in question. Here, the official capacity claims against Schuhmann, Gelhausen, Betts, Wood, Flaherty, Schmidt, Wood, and Paris are therefore dismissed.

## G. Failure to Report Child Abuse Claims

Defendant Betts moves to dismiss Plaintiffs' claims for failure to report child abuse, arguing no private right of action exists for a violation of KRS 620.030 or KRS 620.040, duty to report abuse. Betts also argues that because there is no private action for violating KRS 620.030,

---

[32] Metro Government did not move to dismiss Plaintiffs' federal claims on the grounds of sovereign immunity.

he owed no duty to Plaintiffs and Plaintiffs' failure to report claims, as well as fraud by omission/duty to disclose and fraudulent concealment claims, are insufficiently pled. Betts relies on *Compton v. City of Harrodsburg*, No. 5:12-cv-302-JMH, 2013 WL 663589 *6 (E.D. Ky. Feb. 22, 2013), which held the Kentucky Supreme Court would conclude there is no private right of action created by the statutory duty to report child abuse under KRS 620.030. Yet this opinion was amended on reconsideration in *Compton v. City of Harrodsburg,* No. 5:12-cv-302-JMH, 2013 WL 1993235 (E.D. Ky. May 10, 2013), holding that the language used by the Kentucky Supreme Court in *Turner v. Nelson*, 342 S.W.3d 866, 878 (Ky. 2011), strongly suggests that it would recognize a claim under KRS 446.070 for a violation of KRS 620.030. The court thus permitted the plaintiff, a minor who had allegedly been sexually abused by a police officer, to move forward with a claim for violating KRS 620.030.

Commonly known as Kentucky's negligence per se statute, KRS 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." The Kentucky Supreme Court has held that "the statute applies when the alleged offender violates a statute and the plaintiff comes within the class of persons intended to be protected by the statute." *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011) (citing *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99–100 (Ky. 2000)). Here, assuming the allegations in the Plaintiffs' complaints are true, they fall within the class of persons KRS 620.030 was designed to protect for failure to report child abuse, and thus KRS 446.070 provides a cause of action for Plaintiffs. For these reasons, Betts's arguments regarding a lack of duty to support Plaintiffs' claims for fraud by omission/duty to disclose, fraudulent concealment, and failure to report are incorrect and his motion is denied.

**H. 1681(a)—Hostile Educational Environment and Sex Discrimination**

Metro Government and the Boy Scout Defendants argue these claims are barred by the statute of limitations. As discussed above, the Court need not decide the statute of limitations at this time. The Boy Scout Defendants argue that even if not barred by the statute of limitations, this claim is inadequately pled by Plaintiffs. However, Plaintiffs agreed to voluntarily dismiss these claims against the Boy Scout Defendants pursuant to agreed-upon orders. [DE 51, 76, 103, 133, 160, 184, 210; DE 209, Oct. 3, 2018 Order]. Accordingly, this argument is moot.

**I. 41 USC § 2000e-2(d)—Title VII Gender and Age Discrimination**

Each Plaintiff has asserted a claim for violations of 42 U.S.C. § 2000(e)-2(a) and 42 U.S.C. § 2000(e)-2(d) against Metro Government. These claims are not asserted against any other Defendant although some Defendants briefed this issue in their motions to dismiss arguing that they cannot be held liable in their individual capacities for these claims. Because these claims are only asserted against Metro Government, the Court need not address the individual Defendants' motions on this point, as they are moot.

The law is well-settled that a plaintiff alleging discrimination under Title VII cannot bring such claims in federal court unless the following administrative prerequisites have been met: "(1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notices of the right to sue." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Puckett v. Tenn. Eastman Douglas Corp.*, 889 F.2d 1481, 1486 (6th Cir. 1989)). "Federal courts do not have subject matter jurisdiction over a plaintiff's claim if that plaintiff fails to raise a Title VII claim before the EEOC." *Reynolds v. Solectron Glob. Servs.*, 358 F. Supp. 2d 688, 691 (W.D. Tenn. 2005) (citing *Lowe v. Monrovia*, 775 F.2d 998, 1003 (9th Cir. 1985)). The Plaintiffs concede these claims

were not raised with the EEOC. *See, e.g.*, [DE 29, B.L. Resp. at 1298]. Accordingly, the Court will dismiss these claims against Metro Government.

### J.   Law of the Case/Claim Preclusion/Issue Preclusion/Res Judicata—C.F.'s Case

Next, BSA and LHC argue that Judge Cunningham's December 28, 2017 Order in Jefferson Circuit Court is binding on C.F.'s case in this Court. [DE 187; DE 187-2]. In that Order, Judge Cunningham dismissed C.F.'s state-law claims against BSA and LHC, dismissing them entirely from the suit as parties.  [DE 187-2 at 7544]. That said, on March 28, 2018, Judge Cunningham granted C.F.'s motion for leave to file a first amended complaint, which asserted the same state-law claims against BSA and LHC.  *Id.* at 1031. The parties contend that both Orders were never distributed by the court to the parties and remained undiscovered until May 2018.  They now dispute whether Judge Cunningham's December 2017 Order stands. [DE 187 at 7526].

Generally, "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 437 (1974) (citing *Ex parte Fisk*, 113 U.S. 713, 725 (1885)); *see also Burniac v. Wells Fargo Bank*, 810 F.3d 429, 433 (6th Cir. 2016). And federal district courts have the "authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal." *Granny Goose Foods, Inc.*, 415 U.S. at 437.

Judge Cunningham's December 2017 Order dismissing C.F.'s state-law claims against BSA and LHC indicated that it was a "final and appealable ruling as to BSA/LHC." [DE 187-2 at 7544]. C.F. was thus required to file a notice of appeal no later than February 7, 2018 and BSA and LHC were no longer parties to the suit. *See* Ky. R. Civ. P. 73.02(1). And Kentucky law is

clear the time to file a notice of appeal is not tolled even though the parties were not notified of

Judge Cunningham's December 2017 Order and did not learn of its existence until May 9, 2018.

*See* Ky. R. Civ. P. 77.04 ("Failure of the trial court to require service of notice of entry of any

judgment or order under this rule or the failure of the clerk to serve such notice . . . does not

affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal

within the time allowed, except as permitted in Rule 73.02(1)."); *Stewart v. Ky. Lottery Corp.*,

986 S.W.2d 918, 920 (Ky. Ct. App. 1998) ("Our courts have consistently enforced the harsh

dictates of CR 77.04(4)." (collecting cases)). C.F.'s claims against BSA and LHC were thus

unappealable as of February 8, 2018.

Complicating matters, however, is Judge Cunningham's March 28, 2018 Order granting

C.F.'s motion for leave to file a first amended complaint, which asserted the same state-law

claims against BSA and LHC as those dismissed in December 2017.[33]  Case 306, [DE 1-2 at

1031].  However, no service of process was issued for BSA and LCH suggesting there was no

intent to bring them back into the suit after their dismissal in December 2017. It is unclear why

Judge Cunningham granted C.F.'s motion given his December 2017 ruling, and the case was

removed to this Court before the parties sought clarity on the issue.

Regardless, principles of res judicata instruct that "a final judgment on the merits of an

action precludes the parties or their privies from relitigating issues that were or could have been

raised in that action." *San Remo Hotel, L.P. v. City & Cty. of S.F.*, 545 U.S. 323, 336 n.16 (2005)

(internal quotation marks and citation omitted); *see also Yeoman v. Commonwealth Health

Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) ("Claim preclusion bars a party from re-litigating a

previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of

---

[33] The first amended complaint included a new Title IX claim against BSA and LHC.  However, those claims were voluntarily dismissed on October 11, 2018.  [3:18-cv-306, DE 41].

action." (citations omitted)). "For claim preclusion to bar further litigation, certain elements must be present. First, there must be identity of the parties." *Yeoman*, 983 S.W.2d at 465 (citing *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970)). "Second, there must be identity of the causes of action." *Id.* "Third, the action must have been resolved on the merits." *Id.* As noted previously, Judge Cunningham unambiguously dismissed C.F.'s claims against BSA and LHC on December 28, 2017, and C.F. did not appeal that ruling. Because the parties and claims are the same, the determinative issues of C.F.'s claims from his original complaint are identical to those in the amended complaint, and the first two elements are satisfied. *See id.* at 465. Additionally, Judge Cunningham's rulings on the dismissed claims against BSA and LHC were final and appealable judgments on the merits. *Id.*; *see also* Ky. R. Civ. P. 41.02(c) (defining a judgment on the merits). Res judicata thus bars C.F. from seeking to reassert the claims against BSA and LHC that Judge Cunningham dismissed in his December 2017 Order.

For these reasons, the Court finds good cause to modify Judge Cunningham's March 2018 Order and remove the previously dismissed state-law claims against BSA and LHC from C.F.'s amended complaint. *Granny Goose Foods, Inc*, 415 U.S. at 437. Because the only remaining claims against BSA and LHC under 20 U.S.C. 1681(a) have since been voluntarily dismissed [3:18-cv-306, DE 41], BSA and LHC are dismissed from C.F.'s suit.

### K. Betts's Motion to Dismiss N.C.'s suit under Rule 41(b)

Betts seeks to dismiss N.C.'s case under Fed. R. Civ. P. 41(b) for violating the Kentucky state court's order sealing the case under KRS 413.249(3). Betts argues that after the state court sealed the case on March 9, 2017, the contents of the complaint were disseminated by N.C.'s former counsel to the community before the state court ultimately unsealed the case on April 10, 2017. [DE 107-1, Betts Mot. Dis. at 4750–52]. Betts was criminally indicted in Jefferson Circuit

Court on or around April 12, 2017, in *Commonwealth v. Betts*, No. 170CR-1041. Betts states that this conduct was willful and in bad faith. Betts cites numerous news articles relating to the civil case during the March 9, 2017 to April 10, 2017 timeframe.

Fed. R. Civ. P. 41(b) provides "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it . . . ." These factors are considered by the district court prior to dismissing a case for failure to comply with a court order:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Pelman ex rel. Pelman v. McDonald's Corp.*, 452 F. Supp. 2d 320, 323–24 (S.D.N.Y. 2006). Certainly, dissemination of the contents of the complaint to the public after the case was sealed could be sanctionable conduct. That said, there is no evidence of record establishing when the dissemination occurred in relation to when the case was first sealed, although the timing of the news articles imply it may have occurred after the case was sealed. It also does not appear that Plaintiff was on notice that failure to comply would result in dismissal although counsel should appreciate same. Betts was criminally indicted in Jefferson Circuit Court shortly after N.C.'s case was filed and that matter was part of the public record. And the case was only sealed one month before the court dissolved the seal. Thus, even assuming all factors in favor of Betts, the prejudice suffered is not proportional to the sanction of dismissal. For these reasons, Betts's motion to dismiss N.C.'s case under Fed. R. Civ. P. 41(b) is denied.

### L.  Pleading of Battery and Negligence

Betts argues that Plaintiff K.W.'s negligence claim fails because K.W. has pled the intentional tort of battery and the two are mutually exclusive. It is well settled under the Federal Rule of Civil Procedure that alternative theories of relief can be pled. Rule 8(d)(2) provides:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2). The rule goes further, providing that "a party may state as many separate claims or defenses as it has, *regardless of consistency*." Fed. R. Civ. P. 8(d)(3) (emphasis added). Accordingly, Betts's motion to dismiss K.W.'s claim of negligence on this ground is denied.

### M.  Plaintiff C.F.'s Motion to File Second Amended Complaint

Plaintiff C.F. moves to amend his complaint to assert a claim against Defendant Wood for assault, sexual assault, harassment, and battery. [DE 197]. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint shall be freely given when justice so requires. Fed. R. Civ. P 15(a); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). The Sixth Circuit has explained that Rule 15 reflects a "liberal amendment policy." *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of the pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). "Thus, so long as the opposing party suffers no prejudice or disadvantage, the court should grant amendments to the complaint." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *1 (W.D. Ky. Oct. 4, 2016) (citing *Cooper v. Am. Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961)). In deciding whether to grant a motion to amend, courts consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving

party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *See Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (citations omitted)). *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Whether or not to allow an amended pleading under Rule 15(a) is committed to the Court's discretion. *Tucker v. Middleburg–Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008).

As for undue delay in filing, Plaintiff C.F. claims he delayed in bringing this claim because of repressed memories and fear of getting Wood in trouble. [DE 197, at 8069-70]. In regard to lack of notice to the opposing party, Wood is already a party in C.F.'s suit, but not as an alleged perpetrator of sexual assault. Bad faith by the moving party does not appear to be in issue. C.F. has already amended his complaint once without adding this claim against Wood. Wood is not unduly prejudiced as discovery had not started when C.F. sought leave to file the amended complaint and no discovery had taken place. Here, the balance of factors support permitting C.F. to amend his complaint. As a result, C.F.'s motion to file second amended complaint is granted. However, certain claims set forth in C.F.'s second amended complaint have already been determined futile in this opinion and therefore those claims in the second amended complaint are *sua sponte* dismissed by the Court consistent with the rulings set forth herein.

### III.    CONCLUSION

The Court, being otherwise and sufficiently advised, **HEREBY ORDERS** as follows:

1.      The Motion to Dismiss [DE 10] filed by Defendant Brandon Wood is **DENIED**;

2.    The Sealed Motion to Dismiss [DE 11], redacted version [DE 60], filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff B.L.'s claim for violation of 42 U.S.C. § 2000(e)2(a) and 42 U.S.C. § 2000(e)2(d); Plaintiff B.L.'s state law claims; Plaintiff B.L.'s official capacity claims against Bradley Schuhmann, Matthew Gelhausen, Kenneth Betts, Brandon Wood, Curtis Flaherty, and Julie Schmidt; and is **DENIED on all other grounds**;

3.    The Motion to Dismiss [DE 12] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff B.L.'s official capacity claim against Kenneth Betts, Plaintiff B.L.'s fraudulent concealment claim, and Plaintiff B.L.'s claim in Count IX for childhood sexual assault and abuse; and is **DENIED on all other grounds**;

4.    The Motion to Dismiss [DE 13] filed by Defendant Julie Schmidt is **DENIED**;

5.    The Motion to Dismiss [DE 14] filed by Defendant Curtis Flaherty is **DENIED**;

6.    The Motion to Dismiss [DE 15] filed by Boy Scouts of America, Lincoln Heritage Counsel, Inc., Learning for Life, and Learning for Life Lincoln Chapter, Inc. **is GRANTED in part** as to Plaintiff B.L's fraudulent concealment claim; and is **DENIED on all other grounds**;

7.    The Motion to Dismiss [DE 16] filed by Defendant Matthew Gelhausen is **DENIED**;

8.    The Sealed Motion to Dismiss [DE 22], redacted version [DE 127], filed by Defendant Bradley Schuhmann is **DENIED**;

9.    The Sealed Motion to Dismiss [DE 61], redacted version [DE 62], filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff A.S.'s claim for violation of 42 U.S.C. § 2000(e)2(a) and

42 U.S.C. § 2000(e)2(d); Plaintiff A.S.'s state law claims; Plaintiff A.S.'s official capacity claims against Kenneth Betts and Curtis Flaherty, and is **DENIED on all other grounds**;

10.     The Motion to Dismiss [DE 63] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff A.S.'s official capacity claim against Kenneth Betts, Plaintiff A.S.'s fraudulent concealment claim; and is **DENIED on all other grounds**;

11.     The Motion to Dismiss [DE 64] filed by Boy Scouts of America, Lincoln Heritage Counsel, Inc., Learning for Life, and Learning for Life Lincoln Chapter, Inc. **is GRANTED in part** as to Plaintiff A.S.'s fraudulent concealment claim and is **DENIED on all other grounds**;

12.     The Motion to Dismiss [DE 65] filed by Defendant Curtis Flaherty is **DENIED**;

13.     The Motion to Dismiss [DE 79] filed by Defendant Brandon Wood is **DENIED**;

14.     The Motion to Dismiss [DE 80] filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff KW.'s claim for violation of 42 U.S.C. § 2000(e)2(a) and 42 U.S.C. § 2000(e)2(d); Plaintiff B.L.'s state law claims except for the gender discrimination claim for violation of KRS 344.070; Plaintiff B.L.'s official capacity claims against Kenneth Betts, Brandon Wood, Curtis Flaherty, Julie Schmidt, and Paul Brandon Paris; and is **DENIED on all other grounds**;

15.     The Motion to Dismiss [DE 81] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff K.W.'s official capacity claim against Kenneth Betts and Plaintiff K.W.'s fraudulent concealment claim; and is **DENIED on all other grounds**;

16.     The Motion to Dismiss [DE 82] filed by Defendant Julie Schmidt is **DENIED**;

17.     The Motion to Dismiss [DE 83] filed by Defendant Paul Brandon Paris is **DENIED**;

18.     The Motion to Dismiss [DE 84] filed by Boy Scouts of America, Lincoln Heritage Counsel, Inc., Learning for Life, and Learning for Life Lincoln Chapter, Inc. **is GRANTED in part** as to Plaintiff K.W.'s fraudulent concealment claim and is **DENIED on all other grounds**;

19.     The Motion to Dismiss [DE 85] filed by Defendant Curtis Flaherty is **DENIED**;

20.     The Motion to Dismiss [DE 104] filed by Brandon Wood is **DENIED**;

21.     The Motion to Dismiss [DE 105] filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff N.C.'s claim for violation of 42 U.S.C. § 2000(e)2(a) and 42 U.S.C. § 2000(e)2(d); Plaintiff N.C.'s state law claims; Plaintiff N.C.'s official capacity claims against Kenneth Betts, Brandon Wood, and Curtis Flaherty; and is **DENIED on all other grounds**;

22.     The Motion to Dismiss [DE 106] filed by Boy Scouts of America, Lincoln Heritage Counsel, Inc., Learning for Life, and Learning for Life Lincoln Chapter, Inc. **is GRANTED in part** as to Plaintiff N.C.'s fraudulent concealment claim and is **DENIED on all other grounds;**

23.     The Motion to Dismiss [DE 107] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff N.C.'s official capacity claim against Kenneth Betts and Plaintiff N.C.'s fraudulent concealment claim; and is **DENIED on all other grounds**;

24.     The Motion to Dismiss [DE 108] filed by Defendant Curtis Flaherty is **DENIED**;

25.     The Motion to Dismiss [DE 135] filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff E.B.'s state law claims; Plaintiff E.B.'s official capacity claims against Kenneth Betts and Curtis Flaherty; and is **DENIED on all other grounds**;

26.     The Motion to Dismiss [DE 136] filed by Defendants Boy Scouts of America, Lincoln Heritage Counsel, Inc., Learning for Life, and Learning for Life Lincoln Chapter, Inc. **is GRANTED in part** as to Plaintiff E.B.'s fraudulent concealment claim and is **DENIED on all other grounds;**

27.     The Motion to Dismiss [DE 139] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff E.B.'s official capacity claim against Kenneth Betts and Plaintiff E.B.'s fraudulent concealment claim; and is **DENIED on all other grounds;**

28.     The Motion to Dismiss [DE 140] filed by Defendant Curtis Flaherty is **DENIED;**

29.     The Motion to Dismiss [DE 161] filed by Defendant Brandon Wood is **DENIED;**

30.     The Motion to Dismiss [DE 162] filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff F.A.'s state law claims; Plaintiff F.A.'s official capacity claims against Kenneth Betts, Brandon Wood, Casey Scott, and Curtis Flaherty; and is **DENIED on all other grounds**;

31.     The Motion to Dismiss [DE 163] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff F.A.'s official capacity claim against Kenneth Betts and Plaintiff F.A.'s fraudulent concealment claim; and is **DENIED on all other grounds;**

32.     The Motion to Dismiss [DE 166] filed by Defendant Curtis Flaherty is **DENIED;**

33.     The Motion to Dismiss [DE 167] filed by Defendants Boy Scouts of America, Lincoln Heritage Counsel, Inc., Learning for Life, and Learning for Life Lincoln Chapter, Inc. is **GRANTED in part** as to Plaintiff F.A.'s fraudulent concealment claim and **is DENIED on all other grounds**;

34.     The Motion to Dismiss [DE 168] filed by Defendant Casey Scott is **DENIED;**

35.     The Motion to Dismiss [DE 185] filed by Defendant City of Louisville/Jefferson County/Louisville Consolidated Government is **GRANTED IN PART** as to: Plaintiff F.A.'s claim for violation of 42 U.S.C. § 2000(e)2(a) and 42 U.S.C. § 2000(e)2(d); Plaintiff F.A.'s state law claims; Plaintiff B.L.'s official capacity claims against Kenneth Betts, Brandon Wood, and Curtis Flaherty; and is **DENIED on all other grounds**;

36.     The Motion to Dismiss [DE 186] filed by Defendants Learning for Life, and Learning for Life Lincoln Chapter, Inc. is **GRANTED in part** as to Plaintiff C.F.'s fraudulent concealment claim and is **DENIED on all other grounds**;

37.     The Motion to Dismiss [DE 187] filed by Defendants Boy Scouts of America and Lincoln Heritage Counsel, Inc. is **GRANTED** and Defendants Boy Scouts of America and Lincoln Heritage Counsel, Inc. are **DISMISSED** from the case brought by Plaintiff C.F., originally under action number 3:18-cv-00306, *C.F. v. Kenneth Betts, et al*.; **THIS IS A FINAL AND APPEALABLE ORDER AS TO THE COURT'S RULING WITH NO JUST CAUSE FOR DELAY** on Motion to Dismiss [DE 187]**;**

38.     The Motion to Dismiss [DE 188] filed by Defendant Brandon Wood is **DENIED**;

39.     The Motion to Dismiss [DE 190] filed by Defendant Kenneth Betts is **GRANTED IN PART** as to Plaintiff C.F.'s official capacity claim against Kenneth Betts and Plaintiff C.F.'s fraudulent concealment claim; and is **DENIED on all other grounds;**

40.     The Motion for Leave to File Second Amended Complaint [DE 197] filed by Plaintiff C.F. is **GRANTED** and Plaintiff C.F. shall file same **within 20 days** of the entry of this Order; further, the amended pleading should conform to the rulings set forth above with regard to Plaintiff's claims;

41.     Count IX, Childhood Sexual Assault and Abuse-All Defendants, of B.L.'s Second Amended Complaint is **DISMISSED**;

42.     Count IX, Childhood Sexual Assault and Abuse-All Defendants, of A.S.'s Verified Complaint is **DISMISSED**;

43.     Count IX, Childhood Sexual Assault and Abuse-All Defendants, of K.W.'s First Amended Complaint is **DISMISSED**;

44.     Count X, Childhood Sexual Assault and Abuse-All Defendants, of N.C.'s Second Amended Complaint is **DISMISSED**;

45.     Count IX, Childhood Sexual Assault and Abuse-All Defendants, of F.A.'s First Amended Complaint is **DISMISSED**;

46.     Count IX, Childhood Sexual Assault and Abuse-All Defendants, of C.F.'s First Amended Complaint is **DISMISSED**;

47.     **IS IT HEREBY FURTHER ORDERED**, Plaintiffs are **GRANTED** leave to file amended complaints within 20 days of the entry of this Order complying with the pleading requirements of Federal Rule of Civil Procedure 9; any amended pleadings should conform to the rulings set forth above with regard to Plaintiffs' claims.

Rebecca Grady Jennings, District Judge
United States District Court

May 2, 2019